UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. LEO M. GORDON, JUDGE

_____
                                          :
AMOENA USA CORP.,                         :
                                          :          Court No. 20-00100
                    Plaintiff,            :
                                          :
          v.                              :
                                          :
UNITED STATES,                            :
                                          :
                    Defendant.            :
_____:


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
(212) 557-4000

Robert B. Silverman
Katherine A. Dobscha
Joseph M. Spraragen

Dated: November 21, 2024
        New York, New York

## **TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ISSUES OF LAW ......................................................................................................... 5

SUMMARY OF ARGUMENT ...................................................................................... 6

ARGUMENT ................................................................................................................ 7

   I.   The Subject MBs Are Not Classifiable as Brassieres Under Heading 6212, HTSUS........ 7

   II.   The Subject MBs Are Classifiable as Accessories to Artificial Body Parts. ..................... 12

      A.   Heading 9021 is the Proper Classification for Amoena's MBs. ............................. 12

      B.   Other Jurisdictions Have Classified Amoena's MBs as Accessories to Breast Forms Under Heading 9021. ............................................................................ 14

   III.   Exclusionary Note 1(b) to Chapter 90 is Inapplicable to the Amoena Mastectomy Bras. 16

      A.   Chapter 90 Note 1(b) Does Not Apply Because an Artificial Breast Form is Not an Organ of the Body. ......................................................................................... 17

      B.   Chapter 90 Note 1(b) Does Not Apply Because the Mastectomy Bra Support is not Derived Solely from its Elasticity. ....................................................................... 18

   IV.   Heading 9021, HTSUS Must Prevail over Heading 6212, HTSUS. ............................... 20

CONCLUSION ............................................................................................................ 23

## **TABLE OF AUTHORITIES**

**Cases**

*Amoena (UK) Ltd. v. Comm'rs for Her Majesty's Revenue & Customs, [2016] UKSC 41 (S.C.)* 11

*Amoena Austl. Pty Ltd. v Chief Exec. Officer of Customs (2016) AATA 357 (Austl.)* ...... 14, 15, 16

*Avenues in Leather, Inc. v. United States*, 178 F.2d (Fed. Cir. 1999) ......................................... 11

*Baxter Healthcare Corp. v. United States*, 182 F.3d (Fed. Cir. 1999) ........................................... 7

*CamelBak Prod., LLC v. United States*, 649 F.3d (Fed. Cir. 2011)............................................... 10

*Container Store v. U.S.*, 145 F. Supp. 3d (Ct. Int'T Trade 2016).................................................. 21

*Gerson Co. v. United States*, 898 F.3d (Fed. Cir. 2018)............................................................... 20

*La Crosse Tech., Ltd. v. United States*, 723 F.3d (Fed. Cir. 2013)............................................... 20

*Link Snacks, Inc. v. U.S.*, 742 F.3d (Fed. Cir. 2014)...................................................................... 6

*Lockhart Textiles Inc. v. United States*, 445 F. Supp. 3d (Ct. Int'l Trade 2020)........................... 21

*Mast Industries vs United States*, 9 C.I.T. (1985)........................................................................... 8

*ME Glob., Inc. v. United States*, 633 F. Supp. 3d (Ct. Int'l Trade 2023)..................................... 22

*Millennium Lumber Distrib. Ltd. V. United States*, 558 F.3d (Fed. Cir. 2009) ............................. 7

*Orlando Food Corp. v. United States*, 140 F.3d (Fed. Cir. 1998) ................................................ 22

*Rollerblade, Inc. v. United States*, 24 C.I.T. (2000) ..................................................................... 13

*Second Nature Designs Ltd. v. United States*, 660 F. Supp. 3d (Ct. Int'l Trade 2023)................. 10

*StoreWALL, LLC v. U.S.*, 644 F.3d (Fed. Cir. 2011) ..................................................................... 21

*Trijicon, Inc. v. United States*, 686 F. Supp. 3d (Ct. Int'l Trade 2024)................................... 7, 22

*United States v. Andrew Fisher Cycle Co. Inc*, 426 F.2d 1308 (C.C.P.A. 1970) .......................... 8

*Universal Elecs. Inc. v. U.S.*, 112 F.3d (Fed. Cir. 1997) ............................................................... 7

*Victoria's Secret Direct, LLC v. United States*, 769 F.3d (Fed. Cir. 2014) ................................ 11

*Victoria's Secret Direct, LLC v. United States*, 908 F.Supp.2d (CIT 2013)...................... 8, 10, 11

*Wilton Indus., Inc. v. United States*, 31 C.I.T. (2007).................................................................. 14

**Statutes**

28 U.S.C. § 1581(a) ................................................................................................ 2

28 U.S.C. § 2639(a)(1) .......................................................................................... 7

28 U.S.C. § 2640(a) ............................................................................................... 7

**Customs Rulings**

HQ 193658 (July 20, 2015) .................................................................................. 23

HQ 962702 (Feb. 22, 2000) ............................................................................ 12, 16

HQ H011755 (Apr. 16, 2008) ............................................................................... 13

HQ H291901 (Sept. 19, 2019) ..................................................................... 12, 16, 17

NY N005512 (Feb. 2, 2007) ................................................................................. 12

NY N216936 (May 24, 2012) ............................................................................... 12

NY N251158 (Mar. 21, 2014) ............................................................................... 16

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. LEO M. GORDON, JUDGE

| | |
|---|---|
| _____ : | |
| AMOENA USA CORP., : | |
| : | Court No. 20-00100 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |
| _____: | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case concerns the tariff classification of Amoena USA Corp. ("Amoena") mastectomy brassieres ("subject MBs") under the Harmonized Tariff Schedule of the United States ("HTSUS"). The subject MBs are designed and intended to be worn by a small subset of women who have had single or double mastectomies or lumpectomies, and who have not had reconstructive surgery. The subject MBs are marketed and sold through limited avenues of distribution rather than through general merchandise vendors where lingerie is sold. The subject MBs are designed to hold artificial breast forms (prostheses) in place, and to cover scars and radiation burns of the cancer survivors who wear the subject MBs.

U.S. Customs and Border Protection ("Customs") classified the subject merchandise upon liquidation under subheading 6212.10.90.20, HTSUS, which provides for "other brassieres of manmade fiber," dutiable at 16.9% *ad valorem*.

Plaintiff Amoena moves for summary judgment holding that the subject MBs are classifiable under subheading 9021.39.0000, HTSUS, which provides for "Orthopedic appliances

artificial parts of the body; parts and accessories thereof: Other artificial parts of the body and

parts and accessories thereof: Other," free of duty.

The principal issue in this case is whether the subject MBs are classifiable under

subheading 6212.10.90.20, HTSUS, which is an *eo nomine* provision or under subheading

9021.39.0000, HTSUS, which is a principal use provision.

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) and there are no genuine

issues of material facts to be resolved at trial.

## **STATEMENT OF FACTS**

### **The Amoena MBs Have Been Designed to Hold Artificial Breast Forms in Place.**

Amoena is an artificial breast form manufacturer, and the production of breast forms is

Amoena's main business.   Plaintiff's Statement of Material Facts Not in Dispute ("PSMF"), ¶ 5.

Artificial breast forms are a type of prosthesis that are used by women who have had

mastectomies or similar procedures, and who have not had reconstructive surgery. *Id.* at ¶ 4.

These breast forms serve as artificial replacements for breasts that have been removed in whole

or in part through mastectomies or lumpectomies.[1] *Id.*

The subject merchandise is constructed with a mix of fibers, metal, and plastic. Joint

Statement of Material Facts ("JSMF"), ¶ 13. All the components work together to enable the

MBs to function. PSMF at ¶¶ 6-16.  The subject merchandise provides support to hold an

artificial breast form in position, and to prevent the form from falling, slipping, sinking or

creating any discomfort during daily activities, and to provide the wearer with the confidence to

resume normal physical activities while using an artificial breast form. *Id.* at ¶ 3. The subject

---

[1] Artificial breast forms used as prostheses have been classified by as artificial parts of the body under Heading 9021, HTSUS.   *See* NY N005512 (Feb. 2, 2007); HQ H291901 (Sept. 19, 2019).

2

MBs and the artificial breast forms are designed to work together to create symmetry with the remaining natural breast, providing the wearer, *inter alia*, with real psychological benefits after invasive surgery. *Id.* at ¶ 6. Amoena's mastectomy bras include the following features:

- Pockets to support and hold breast form prosthetics in place. *Id.* at ¶ 7.

- Cups designed to follow the shape of a breast form and to cover scars and radiation burns. *Id.* at ¶ 9.

- Wide shoulder straps that are closely spaced to provide more halt, support, and coverage, and to minimize the strain on the shoulders. *Id.* at ¶¶ 10-11.

- Wide under-bands to ensure that the breast form stays securely in place. *Id.* at ¶ 12.

- High center front to cover the breast form and hide scars, radiation burns, and to provide ample support to the breast form. *Id.* at ¶ 13.

- Side seams which have been designed to provide coverage to hide scars or radiation burns and to provide support and comfort. *Id.* at ¶ 14.

- Variable back fastenings which have been designed to have several hook rows—up to eight hooks—in order to provide the right amount of support. *Id.* at ¶ 15.

- Soft edge elastic fibers which are designed to ensure that women with lymphostasis are comfortable by providing extra security, i.e., at inner cup edge to hold the breast form. *Id.* at ¶ 16.

**Amoena MBs are Marketed Through Limited Distribution Channels.**

The MBs are marketed to women who are facing cancer diagnoses, undergoing mastectomies or partial breast removal surgeries, and to women who have already gone through these experiences. PSMF at ¶ 20. The Amoena MBs are marketed to healthcare professionals. *Id.* at ¶ 21. The Amoena MBs are shown at medical conferences to raise awareness of the product among doctors. *Id.* at ¶ 22. Amoena has a section on its website dedicated to medical professionals to provide details and support to guide their patients in their journey through breast cancer surgery. *Id.* at ¶ 23.

The vast majority of the subject MBs are sold through medical specialists, orthopedic shops, or clinics where they are fitted by specially trained nurses or fitters. PSMF, ¶ 24. A smaller number of sales are made through department stores where certified fitters are available. *Id.* The subject MBs are also available through e commerce websites. *Id.* at ¶ 25. These sites are generally recommended as a source for customers who have been previously fitted by a certified fitter. *Id.* FY 2015-16 sales of MBs subject to this litigation were 26.4% to medical stores, 31.2% to specialty lingerie stores, 2.9% to pharmacies, 18.8% to hospitals, 9.0% to department stores, and 11.6% to E-commerce *Id* at ¶ 26. When the breast forms and MBs are sourced through certified fitters, the purchase of these items can be reimbursed through insurance coverage. *Id.* at ¶ 28.

**Amoena MBs are Used by Female Cancer Survivors who Have Not Had Reconstructive Surgery.**

The subject merchandise is principally used as an accessory to the artificial breast forms which they are specifically designed to hold. PSMF, ¶ 29. MBs are used as a necessary accessory to the breast form. *Id.* at ¶ 30. The MBs are principally used by women who have undergone mastectomies or related surgeries on their breasts. *Id.* at ¶ 31.

Amoena has prepared fitting guides and programs to teach fitters to fit the subject MBs

and the artificial breast forms to the female body. PSMF, ¶ 62. There are organizations that will certify qualified fitters. *Id* at ¶ 32.

## TARIFF PROVISIONS AT ISSUE

| **Heading/Subheading** | **Description** |
|---|---|
| 6212 | Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted: |
| 6212.10 | Brassieres: |
| 6212.10.90.20 | Other . . . . . . . . . 16.9 % |
| | |
| 9021 | Orthopedic appliances, including crutches, surgical belts and trusses; splints and other fracture appliances; artificial parts of the body; hearing aids and other appliances which are worn or carried; or implanted in the body, to compensate for a defect or disability; parts and accessories thereof: |
| 9201.39.0000 | Other artificial parts of the body or body accessories thereof: Other . . . . . . . . . Duty Free |

## ISSUES OF LAW

1.   Are the subject MBs classifiable as "brassieres or similar articles" in Heading 6212, HTSUS?

2.   Are the subject MBs classifiable as "accessories to an artificial part of the body" in Heading 9021, HTSUS?

3.   Are the subject MBs more specifically provided for under Heading 9021, HTSUS?

## <u>SUMMARY OF ARGUMENT</u>

The threshold issue in this case is whether the subject MBs are brassieres (or similar articles) or whether they are accessories to artificial body parts. Plaintiff's position is that the subject MBs are not brassieres (or similar articles) under Heading 6212, HTSUS, and that they are accessories to artificial body parts under Heading 9021, HTSUS. The Notes to the HTSUS, and the General Rules of Interpretation require the subject MBs to be classified under Heading 9021, HTSUS, as claimed.

A grant of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). This case can be resolved by summary judgment as there are no disputed issues of material facts. The material facts regarding the physical characteristics of the subject merchandise, its development, marketing, channels of sale, and intended uses are not contested.

What remains is for the Court to determine whether plaintiff is entitled to judgment as a matter of law. A classification case generally involves a two-step analysis. In the first step, the Court determines the proper meaning of the terms in the relevant tariff provisions, which is a question of law. *See Link Snacks, Inc. v. U.S.*, 742 F.3d 962, 965 (Fed. Cir. 2014). In the second step, the Court determines whether the merchandise in issue properly falls within the description of those terms, which is a question of fact. *Id*. "However, when there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'" *Id*. at 965-66 (citation omitted).

Here, there is no dispute as to the nature of the subject merchandise, which consists of MBs that have been designed, marketed, sold to, and used by a small subset of women who have undergone single or double mastectomies and who have not had reconstructive surgery.

6

Therefore, the classification question before the Court is a question of law—Heading 6212 vs Heading 9021. In such instances, this Court reviews classification cases *de novo*, in accordance with 28 U.S.C. § 2640(a). *Photonetics, Inc. v. U.S.*, 33 CIT 1549, 1554, 659 F. Supp.2d 1317 (Ct. Int'l Trade 2009) (citing *Universal Elecs. Inc. v. U.S.*, 112 F.3d 488, 491-93 (Fed. Cir. 1997). While a presumption of correctness attaches to Customs' classifications pursuant to 28 U.S.C. § 2639(a)(1), "this presumption 'is irrelevant where there is no factual dispute between the parties.'" *Id.* at 1553-54 (citations omitted). Accordingly, since there are no disputed material facts in this case, no deference is due to Customs' classification determination.

## **ARGUMENT**

### I.   **The Subject MBs Are Not Classifiable as Brassieres Under Heading 6212, HTSUS.**

Heading 6212, HTSUS covers "Brassieres . . . and similar articles and parts thereof." Heading 6212 is an *eo nomine* provision because it "describes an article by specific name and, absent terms of limitation, includes all forms of the article." *Trijicon, Inc. v. United States*, 686 F. Supp. 3d 1336, 1347 (Ct. Int'l Trade 2024). In order to ascertain the meaning of Heading 6212, HTSUS, the Court first looks to the language of the HTSUS and construes the terms "according to their common commercial meanings." *Millennium Lumber Distrib. Ltd. V. United States*, 558 F.3d 1326, 1329 (Fed. Cir. 2009). The Court also may consult "lexicographic and scientific authorities, dictionaries, and other reliable information" and its "own understanding of the terms used." *Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1337-38 (Fed. Cir. 1999) (citation omitted).

This Court has held in *Victoria Secret Direct* and *Lerner New York* that there is no "standard definition of the term 'brassiere.'" 908 F.Supp.2d 1332, 1353; 908 F. Supp. 2d 1313, 1326. Though no standard definition is available, a brassiere is defined in common lexicography

as "a woman's undergarment to cover and support the breasts." Merriam-Webster, https://www.merriam-webster.com/dictionary/brassiere (last accessed Oct. 9, 2024). Similarly, other lexicographical sources define brassiere as "a woman's undergarment supporting the breasts." Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english-french/brassiere (last accessed Oct. 9, 2024).

We recognize that the Amoena MBs are called "brassieres," and that they look like brassieres to the casual observer. However, the name of an article is not dispositive in determining whether an *eo nomine* provision is the proper classification. *See Victoria's Secret Direct, LLC v. United States*, 908 F.Supp.2d 1332 (CIT 2013), aff'd, 769 F.3d 1102 (Fed. Cir. 2014) (concluding that a "bra top" was not classified under 6212.).[2] This principle is long-standing and has been applied by this Court's predecessor—the United States Customs Court. *See United States v. Andrew Fisher Cycle Co. Inc*, 426 F.2d 1308, 1311 (C.C.P.A. 1970) (holding that bicycle saddles were not classifiable as saddles because an *eo nomine* provision "does not include everything literally within the term").

However, the design, function, marketing, sale, and use of the subject MBs are different than Heading 6212 brassieres such that this heading does not apply here. In our fact section, we identified the features that enable the subject goods to hold breast forms in place, consider the medical needs of the wearer, and when used in conjunction with the breast form, prevent further pain or injury following surgery.[3]

---

[2] *See also Mast Industries vs United States*, 9 C.I.T. 549, 550 (1985), aff'd, 786 F.2d 1144 (Fed. Cir. 1986) where garments known as "big shirts" were classified as nightwear under Heading 384.5226, TSUSA rather than as shirts under Heading 384.4782, TSUSA.

[3] Surgical procedures on women's breasts include mastectomy (total removal of the breast), lumpectomy (partial removal, breast-conserving surgery that is often followed by radiation therapy), and reconstruction (artificial rebuilding of the breast mound). *See Breast Surgery*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/9097-breast-surgery-options

In addition, the subject MBs are sold to different customers than are brassieres. That is, as the Merriam-Webster dictionary explains, brassieres are generally sold to women, whereas the record here reflects that the subject MBs are sold to a small subset of women who have had mastectomies or similar procedures, and who have not had reconstructive surgery.

Based on the limited customer base and special use of the MBs, unlike brassieres which are available in general merchandise stores, Amoena's MBs are available for purchase through designated providers, including hospitals, pharmacies, specialized medical or orthopedic shops or in clinics where they are fitted by specially trained nurses, in addition to department and specialty lingerie stores where fitters are present.[4]

Amoena's MBs also differ from brassieres in that they are usually specially fitted to the wearer.[5] To this end, Amoena provides introductory and advanced "Fit Courses" to train "fitters." *See* Exhibit G to the Schroter declaration (course descriptions and registration information). The curriculum for the advanced fit course includes an "interactive presentation, interviews with surgeons, fitting observation, and hands-on practice." *Id.* In addition to information regarding breast-related surgeries, the needs of patients, and the benefits of their products, the course instructs fitters on how to properly measure and fit breast forms and Amoena's MBs. *Id.* As the materials provided demonstrate, fitters are instructed on a specific method of measuring the under-band and cup size specific to women who have undergone mastectomies or related surgeries. During a fitting consultation, which typically lasts an hour or

---

[4] During the period when the subject entry was filed, 31.2% of Amoena mastectomy bras in the United States were sold in specialty lingerie stores, i.e., service-oriented stores that focus on fit and education for women with special needs, including women who have undergone breast surgery. The remainder of Amoena mastectomy bra sales in the United States were through a variety of other points of sale, including medical stores (26.4%), pharmacies (2.9%), hospitals (18.8%), department stores (9%), and e-commerce (11.6%).  PSMF, *Id.* at ¶ 26.

[5] We recognize that once an MB and an artificial breast form has been fitted, that consumers may opt to purchase the MBs through e commerce sites.

more, the fitter finds the correct mastectomy brassiere to fit the patient and the correctly shaped breast form to fit the MB pocket. The materials also provide photographs demonstrating the differences between brassieres and Amoena's MBs when worn.[6]

We also note that in the United States, the costs of both the artificial breast form (or breast prosthesis) and the post-surgical mastectomy bra can be reimbursed by Medicare.[7] We are not aware of any such reimbursement program that exists for brassiere purchases.

Finally, an article is not to be classified in an *eo nomine* provision if it possesses features "substantially in excess" of the named *eo nomine* article. *CamelBak Prod., LLC v. United States*, 649 F.3d 1361, 1367 (Fed. Cir. 2011). To determine whether an article includes features substantially in excess of the *eo nomine* provision, courts look to the design, use, and function of the article. *Second Nature Designs Ltd. v. United States*, 660 F. Supp. 3d 1352, 1366 (Ct. Int'l Trade 2023) (citation omitted). The design, use, and function of the MB is to support a breast form rather than for supporting breasts. Thus, the MB provides features substantially in excess of brassieres in Heading 6212.

The subject MBs are not properly classifiable as "similar articles" under Heading 6212. The Courts utilize the statutory construction principle of *ejusdem generis* when determining the scope of general terms or phrases like "and similar articles." *Victoria Secret*, 908 F.Supp.2d at 1354. "Classification . . . is appropriate only if the imported merchandise shares the characteristics or purpose and does not have a more specific primary purpose that is inconsistent with the listed exemplars." *Id.* (quoting *Avenues in Leather, Inc. v. United States*, 178 F.2d

---

[6] *See* Exhibit D to the Schroter declaration (providing pictures and explaining the design differences between pocketed and non-pocketed brassieres).
[7] Medicare.gov, "Your Medicare Coverage: Breast prostheses", https://www.medicare.gov/coverage/breast-prostheses.html ("Medicare Part B (Medical Insurance) covers external breast prostheses (including a post-surgical bra) after a mastectomy."); see also "TLC: Tender Loving Care - American Cancer Society, "Medicare/Insurance" https://www.tlcdirect.org/medicare.aspx (indicating that Medicare provides "4-6 Mastectomy Bras annually, or as many as are medically needed/indicated by your doctor").

1241,1244 (Fed. Cir. 1999)). This Court held and the Federal Circuit affirmed that "body support" is the purpose of garments classified in 6212. *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1108 (Fed. Cir. 2014). "It is insufficient for classification under heading 6212 that body support be merely *among* the characteristics or purposes of the garment." *Victoria Secret*, 908 F.Supp.2d 1332 at 1356.

The primary purpose of the MBs is to secure one or two artificial breast forms to the body—not to provide breast or body support. The artificial breast forms cannot be properly used without the MBs. For the vast majority of sales, customers are fitted by specially trained nurses or fitters to ensure that the MBs secure the artificial breast form[s] to the female body. PSMF, ¶¶ 24, 27. The MBs also prevent complications post-mastectomy and provide psychological benefits. *Id.* at ¶ 6. Through its inner cup edge holding the breast form, the MBs provide relief to those with lymphostasis—a side effect of a mastectomy where fluid builds up in the area affected by the surgery. *Id.* at 16. The use of an artificial breast form and a MB specially fitted to the wearer's form and suited to her needs is often critical in countering potential deleterious psychological effects.[8] As evidenced by the design, use, and function of the MBs, Heading 6212 is not the proper classification of these items.

Furthermore, the Amoena MBs cannot be classified under Heading 6212 because doing so would expand Heading 6212 beyond its appropriate scope. In *Victoria Secret Direct,* this Court was concerned with Heading 6212 becoming too broad. 908 F.Supp.2d 1332 at 1358 (2013), aff'd, 769 F.3d 1102 (Fed. Cir. 2014) ("[p]laintiff cites no legislative history to

---

[8] In *Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's Revenue & Customs (Respondent), [2016] UKSC 41 (S.C.) discussed infra at 15,t*the UK Supreme Court acknowledged the psychological impact of breast surgery and the role mastectomy bras and breast forms play in countering that impact. In discussing whether the mastectomy bras could be described as accessories to the breast form, the court held that, "If it were necessary to identify some 'additional functionality' in that sense, the requirement would in my view at least arguably be met by the contribution of the bra to ... lessening the psychological impact of having had the mastectomy." *Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's Revenue & Customs (Respondent)*, [2016] UKSC 41 (S.C.) at para. 44.

demonstrate an intent on the part of the drafters of the Harmonized System, or of the U.S.

Congress when effectuating the HS in the HTSUS, that heading 6212 was ever intended to be so

broad as to include a garment with the characteristics of the Bra Top.").  The same is true for the

subject MBs which are amply provided for in Heading 9021.

II.  **The Subject MBs Are Classifiable as Accessories to Artificial Body Parts.**

   A.  **Heading 9021 is the Proper Classification for Amoena's MBs.**

Heading 9021 includes, *inter alia*, artificial parts of the body and "parts and accessories

thereof." Customs has admitted in its rulings that prosthetic breast forms like the ones used in the

Amoena system are routinely classified under Heading 9021. *See* NY N005512 (Feb. 2, 2007);

HQ H291901 (Sept. 19, 2019); HQ 962702 (Feb. 22, 2000). Amoena's MBs are articles intended

to be used to hold one or two breast forms in place. The artificial breast forms cannot properly be

used without the MBs. Consequently, we submit that the Amoena mastectomy brassieres are

accessories to prosthetic breast forms, and are classifiable under subheading 9021.39.00,

HTSUS, providing for "Other artificial parts of the body and parts and accessories thereof:

Other".

The term accessory is not defined in Chapter 90, HTSUS, or in the Explanatory Notes to

this Chapter. Numerous rulings, however, have considered the issue and draw guidance from the

common dictionary meaning of the term. The definition of "accessory" , which appears in

various Customs rulings (see, e.g., NY N216936 (May 24, 2012)), is "an object or device not

essential in itself but adding to the beauty, convenience, or effectiveness of something else."

2016 Merriam-Webster Online Dictionary.[9] Customs has also explained that accessories "are of

---

[9] *See* HQ H011755 (Apr. 16, 2008) (noting a 2003 Customs ruling that adopted the definition of "accessory" described above and noted that, "There is no requirement that accessories exhibit a reliance or dependence on the

secondary importance, but must, however, contribute to the effectiveness of the principal article

(e.g., facilitate the use of handling of the particular article, widen the range of its uses, or

improve its operation.) HQ H313099 (May 1, 2024). Elsewhere, this Court has reviewed the term

accessory and has made the following conclusions:

> We have noted that the term "accessory" is not defined in either the HTSUSA or
> the Explanatory Notes to the Harmonized System (EN). We, however, have
> repeatedly noted that an accessory is, in addition to being an article related to a
> primary article, is [sic in original] used solely or principally with that article. We
> have also noted that an accessory is not necessary to enable the goods with which
> they are used to fulfill their intended function. They are of secondary importance,
> not essential of themselves. They, however, must contribute to the effectiveness
> of the principal article (e.g., facilitate the use or handling of the principal article,
> widen the range of its uses, or improve its operation). We have also noted that
> Webster's Dictionary defines an accessory as an object or device that is not
> essential in itself, but adds to the beauty, convenience, or effectiveness of
> something else.

*Rollerblade, Inc. v. United States*, 24 C.I.T. 812, 816 (2000), aff'd, 282 F.3d 1349 (Fed. Cir.

2002). Amoena MBs bear a direct relationship to the effectiveness of the breast form as they are

specially constructed with pockets inserted into each cup to accommodate the breast form. The

cups also provide higher and wider coverage than an ordinary brassiere, so as to both hold and

hide the breast form. In addition, the under-band, wider and closely placed shoulder straps, and

plastic side bones placed under the wearer's axilla (i.e., armpit) are some of the other unique

features of the Amoena MBs that are specifically designed to support and secure the breast form.

The Amoena MBs relationship to the breast form fits squarely within Customs' definition

of accessory in HQ 313099 as the MBs facilitate the use and handling of the breast form by

securing it in place. The Amoena MBs also improve the operation of the breast form as opposed

---

primary article(s). Accessories must be related to, or exhibit some connection to the primary article, and must be
intended for use solely or principally as an accessory.").

to ordinary brassieres, which would cause the breast form to move on the wearer's body or fall out entirely. Fisher Decl. ¶ 11. While the Amoena MBs are made to be aesthetically pleasing to the wearer, so as to resemble an ordinary fashion brassiere, their MBs are not ordinary fashion articles. Amoena consulted with doctors, mastectomy brassiere and breast form fitters, and models who are cancer survivors to enhance the breast form by holding it in place, hiding it from view, and maximizing comfort and sense of femininity for users. Schroter Decl. ¶ 13.

The breast form is the primary article, which is essential to compensating for the loss of a breast or breast tissue. The MB is an article that adds to the effectiveness and convenience of using the breast form. The Amoena MBs are, therefore, properly described as accessories to the breast form.

**B.  Other Jurisdictions Have Classified Amoena's MBs as Accessories to Breast Forms Under Heading 9021.**

Though not binding on this Court, foreign tribunals are afforded "respectful consideration" and may have persuasive power. *Wilton Indus., Inc. v. United States*, 31 C.I.T. 863, 881 n. 17 (2007), dismissed, 312 F. App'x 311 (Fed. Cir. 2008). Judicial opinions rendered by the Supreme Court of the United Kingdom and the Administrative Appeals Tribunal of Australia analyzed the classification of Amoena's mastectomy bras and held that Heading 9021 is the correct classification. *See Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's Revenue & Customs (Respondent)*, [2016] UKSC 41 (S.C.); *Amoena Austl. Pty Ltd. v Chief Exec. Officer of Customs (2016) AATA 357 (Austl.).*

The UK Supreme Court supports the classification of the Amoena MB as an accessory to an artificial part of the body.[10] While the UK Supreme Court relied in part on European

---

[10] The UK Supreme Court is the highest court in the United Kingdom judicial system. A diagram demonstrating the structure of the courts of England and Wales can be found at the following web address via the UK Courts and

jurisprudence, the court employed a comparable interpretation of the term "accessory" and concluded that Amoena's MBs met the relevant criteria. To ascertain the definition of accessory for MBs, the UK Supreme Court relied on a previous lower court decision that found the term accessory, of a separate heading, to cover articles performing "a particular service relative to the main function." *Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's Revenue & Customs (Respondent)*, [2016] UKSC 41 (S.C.), para. 14. Ultimately, the court held, "on a natural reading the bra is an 'accessory'. By holding the breast form in place, the bra enables it to perform its function. The bra thus 'performs a particular service relative to the main function' of the breast form."[11]

The Australian court came to the same conclusion that the Amoena mastectomy bra is an accessory. The court identified the MBs primary function as supporting the breast form in such a way so as to make the appliance more acceptable to and comfortable for the wearer. The MBs allow women to securely use the artificial breast form so as to overcome serious disfigurement and avoid other complications that often arise following breast surgery. Amoena Austl. Pty Ltd., at para. 75. The court held as follows:

> [T]he mastectomy bra is an accessory as it is suitable for use principally with the
>
> breast form. The fact that it can be used without a prosthesis by a woman who has

---

Tribunal Judiciary website ("Structure of the courts & tribunal system"): https://www.judiciary.gov.uk/about-the-judiciary/the-justice-system/court-structure/.

[11] The UK Supreme Court decision (in para. 44) affirms the interpretation of the term "accessory" of McCombe LJ of the Court of Appeal (Civil Division) who noted:

> In any normal parlance the [mastectomy bra] would surely be an accessory to the breast form. It holds it up. Certainly, there was evidence that there were other means, apart from [mastectomy bras], for securing breast forms, but in one way or another something has to be done to prevent the form simply sliding down the body and out of place. The [mastectomy bra] is, therefore, in my view, as a matter of simple common sense, an accessory designed to perform that imperative function in relation to the breast form. (para. 86).

*Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's Revenue & Customs* (Respondent), [2016] UKSC 41 (S.C.), para. 34.

not had a mastectomy does not alter its nature. It is not simply an item of clothing.

Its special features make it attractive for wearing by women who have undergone

breast surgery but do not wish to appear as having been deformed as a result of

that procedure. In fact, it is marketed as a mastectomy bra because of its special

features."

*Id.* at para. 79.

Decisions by foreign courts of law are not binding on CBP or on the CIT, but

surely their reasoning is highly relevant to the issue at hand. The prevailing opinion of

these courts is persuasive and has interpretive value. The factual arguments and legal

conclusions made in these decisions and presented herein apply to the instant protest,

particularly in light of the similarity in the language of the relevant provisions of Chapter

90 in the Combined Nomenclature of the European Union ("CN"), Schedule 3 of the

Customs Tariff Act 1995 of Australia, and the HTSUS.

### III.    <u>Exclusionary Note 1(b) to Chapter 90 is Inapplicable to the Amoena Mastectomy Bras.</u>

Historically, Customs has classified MBs under the 6212 heading as brassieres. *See, e.g.*,

HQ 962702 (Feb. 22, 2000); HQ H291901 (Sept. 19, 2019). In such prior rulings, Customs has

excluded MBs from classification under Chapter 90 due to an exclusionary provision in the

chapter notes. Specifically, Note 1(b) to Chapter 90 excludes: "Supporting belts or other support

articles of textile material, whose intended effect on the organ to be supported or held derives

solely from their elasticity (for example, maternity belts, thoracic support bandages, abdominal

support bandages, supports for joints or muscles) (section XI)." Note 1(b) has been cited by

16

Customs to exclude MBs from classification in Chapter 90. See NY N251158 (Mar. 21, 2014) and HQ 962702 (Feb. 22, 2000).[12]

We submit that Note 1(b) to Chapter 90 does apply unless an article would otherwise be covered by a heading in Chapter 90. Customs application of Note 1(b) to exclude the MBs from Chapter 90 implies that but for Note 1(b) that the MBs would otherwise be covered by a heading in Chapter 90. As we explain below, Note 1(b) does not exclude the mastectomy bras for two reasons: (1) the breast form is not an organ of the body; and (2) the support of the artificial breast form is not derived *solely* from its elasticity. Once we show that Note 1 (b) does not apply here, the result is that Heading 9021 is to be the chosen classification.

### A. Chapter 90 Note 1(b) Does Not Apply Because an Artificial Breast Form is Not an Organ of the Body.

First, the Note 1(b) exclusion does not apply to MBs because they are primarily used to support an artificial breast form, which is not an organ of the body. Note 1(b) specifically excludes textile support articles that support or hold an organ.[13] Lexicographical sources define organ as "a differentiated structure (such as a heart, kidney, leaf, or stem) consisting of cells and tissues and performing some function in an organism" and "bodily parts performing a function or cooperating in an activity." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/organ (last accessed Oct. 9, 2024). In HQ 291901 (Sept. 19, 2019), In its rulings Customs has stated the obvious that breasts are organs.[14] Customs, however, fails to

---

[12] The 2000 ruling was also cited in N145875 (Mar. 1, 2011)

[13] Note 1(b) to Chapter 90 provides: "Supporting belts or other support articles of textile material, whose intended effect on the organ to be supported or held derives solely from their elasticity (for example, maternity belts, thoracic support bandages, abdominal support bandages, supports for joints or muscles) (section XI).".

[14] In HQ 291901 CBP noted that pursuant to Dorland's Illustrated Medical Dictionary 1198 (1994), the "term organ is defined as a somewhat independent part of the body that perform a special function."

recognize that the subject merchandise works with an artificial organ, rather than an organ of the body, to which Note 1(b) does not apply.

Unlike organs, the artificial breast form functions as an artificial substitute for an organ and does not consist of cells or tissue. Nor does the breast form perform a function in the human body, e.g., it does not pump blood throughout the body, as the heart does. Although the breast form when used with the subject MBs creates the appearance of a breast, it does not function as an organ of the body.

As a practical matter, the breast form is a man-made article created in a factory that can be temporarily and externally held in place at the chest of the wearer and can be removed at any time. The breast form shares none of the properties or characteristics of an organ of the body and cannot be described as an organ. Therefore, Amoena MBs fall outside the Note 1(b) exclusion because their effect is primarily on the breast form, which is not an organ of the body.

**B.** **Chapter 90 Note 1(b) Does Not Apply Because the Mastectomy Bra Support is not Derived Solely from its Elasticity.**

Significantly, the UK First Tier Tribunal ("FTT"), the first level of judicial appeal of a decision by Her Majesty's Revenue and Customs ("HRMC") (i.e., the UK Customs authority), addressed the applicability of Note 1(b) to Amoena's MBs and came to a different conclusion than U.S. Customs. The FTT followed the plain meaning of the text and, therefore, substantially narrowed the scope of the exclusion. Specifically, at para. 27, the FTT held as follows:

[I]nsofar as it is necessary for us to decide the matter of elasticity, the evidence was that the Carmen Mastectomy bra was made of 50% polyamide, 25% elastane, 15% cotton, and 10% viscose. The supports we saw had a lycra-spandex component of 20%. The label on the mastectomy bra indicated that the back band was made of 30% spandex. We do not consider that the support provided by the

mastectomy bra to the breast form derived solely from its elasticity, and therefore

the garment should not be excluded from Chapter 90 on the basis of Note 1(b).

(Emphasis added). Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's

Revenue & Customs (Respondent), [2011] UKFTT 675 (TC).

The understanding of Note 1(b) to Chapter 90 demonstrated by the UK court above is instructive

in considering the classification of the subject Amoena mastectomy bras upon their importation

into the United States. Applying the accepted interpretation of Note 1(b) employed by the UK

court cited above, such support articles of textile material may be excluded from Chapter 90 only

where factors other than elasticity do not contribute to a significant extent to the intended effect

on the organ to be supported or held.  In short, "solely" means exclusively and that simply is not

the case here.

In our case, Amoena MBs are composed of a variety of elastic and non-elastic materials.

JSMF §13-31. "The subject merchandise is composed of varying amounts of textiles such as

polyamide, cotton, viscose and polyester, with various amounts of elastane or spandex ranging

from 9% to 34% depending on the model." *Id.* at ¶ 14. Notably, the Amoena MBs materials,

construction, and special features work in tandem to support the artificial breast form and hold it

in place in relation to the wearer's torso. Fisher Decl. ¶ 11.

The subject MBs are designed to hold artificial breast forms in place rather than to

compress part of the body as do the exemplars of Note 1(b). The MBs are not compression

garments, and they do not function like the exemplars set out in Note 1(b). PSMF ¶ 19.  Finally,

we have attached a declaration of expert witness Ms. Terri Fisher, the President and CEO of

Platinum Coast Retail Consulting, Inc. who has over thirty-five years in apparel retail

management, and a specialization in the intimate apparel industry. Ms. Fisher's experience and

expertise make her uniquely positioned to provide insight on the Amoena mastectomy bra's construction and functionality. Ms. Fisher's statement supports the assertions made herein that the support function of the Amoena mastectomy bra is accomplished principally by its construction and special features, not its elasticity.[15]

In light of the important role played by the construction elements and non-elastic features in holding the breast form in place, it is clear that factors other than the Amoena mastectomy bras' elasticity contribute to the articles' ability to support the breast form to a significant extent. Consequently, the Note 1(b) exclusion cannot apply.

## IV.    Heading 9021, HTSUS Must Prevail over Heading 6212, HTSUS.

The General Rules of Interpretation ("GRIs") govern the classification of merchandise and are applied in numerical order. *Gerson Co. v. United States*, 898 F.3d 1232, 1235 (Fed. Cir. 2018). GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *Id.* (internal citation omitted). GRI 1 is applied "as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *Camelbak*, 649 F.3d at 1364). Here, GRI 1 controls because the chapter notes indicate that the mastectomy bra, as an accessory to a breast form, must be classified under Heading 9021.

In this regard, Chapter 90 Note 2 mandates that any article classifiable in Chapter 90, stays in Chapter 90. Chapter 90 Note 2 provides that parts and accessories of Chapter 90 are "in

---

[15]*See* Schroter Decl. at ¶¶ 16, 17, and 19-24.

all cases to be classified in their respective headings . . . ."[16] Customs itself classified artificial

breast forms under Heading 9021 and the mastectomy bras are an accessory to the breast form.[17]

Although the Explanatory Note to Chapter 62 includes "brassieres of all kinds," there is no doubt

that HTSUS Chapter Notes take precedence over Explanatory Notes. Explanatory Notes serve as

guidance only and do not carry the same force of law as a chapter note. *See StoreWALL, LLC v.*

*U.S.*, 644 F.3d 1358, 1362 (Fed. Cir. 2011) ("Unlike Chapter Notes, Explanatory Notes are not

legally binding.") (internal citation omitted); *Container Store v. U.S.*, 145 F. Supp. 3d 1331,

1347 (Ct. Int't Trade 2016) ("The Court considers the ENs as guidance insofar as they are

germane and do not conflict with the statutory law.").

Furthermore, the MBs cannot be classified under Heading 6212 because classification

under an *eo nomine* provision is not proper when "such coverage is contrary to legislative intent

or when the articles are limited by the terms of the statute." *.Lockhart Textiles Inc. v. United*

*States*, 445 F. Supp. 3d 1374, 1381 (Ct. Int'l Trade 2020), aff'd, 850 F. App'x 790 (Fed. Cir.

2021) (internal citation omitted). Here Note 2 to Chapter 90 provides the limit to heading 6212

which requires that Heading 9021 must prevail. Chapter 90 Note 2 precludes any further

classification analysis and pursuant to GRI 1 the mastectomy bra is properly classified under

Chapter 9021 because it is an accessory to the breast form.

---

[16] Note 2 to Chapter 90:
  **(a) Parts and accessories which are goods included in any of the headings of this chapter or of chapter 84, 85 or 91 (other than heading 8487,8548 or 9033) are in all cases to be classified in their respective headings;**
  **(b) Other parts and accessories, if suitable for use solely or principally with a particular kind of machine, instrument or apparatus, or with a number of machines, instruments or apparatus of the same heading (including a machine, instrument or apparatus of heading 9010,9013 or 9031) are to be classified with the machines, instruments or apparatus of that kind;**
  (c) All other parts and accessories are to be classified in heading 9033.
(Emphasis added).
[17] Customs has classified breast forms under Heading 9021 as artificial parts of the body. *See* N005512 (Feb. 2, 2007); HQ H291901 (Sept. 19, 2019). Since the mastectomy bra is an accessary to the breast form as explained in Section II, Chapter 90 Note II mandates that the mastectomy bra is classified under 9021.

Finally, if this Court finds GRI 1 is not determinative, then GRI 3 requires the subject MBs to be classified under Heading 9021. GRI 3(a) provides that "the most specific description shall be preferred to headings proving a more general description." Under general customs jurisprudence, "in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998).[18]

Heading 9021 is a principal use provision.[19] Heading 6212, on the other hand, is an *eo nomine* provision because it "describes an article by specific name and, absent terms of limitation, includes all forms of the article." *Trijicon, Inc*, 686 F. Supp. 3d at 1347. As the Federal Circuit explained in *Orlando Food Corp.*, principal use provisions are presumptively more specific than *eo nomine* provisions. Customs itself has adhered to this principle and has held in a Customs ruling that a use provision takes precedence over an *eo nomine* provision when conducting a GRI 3(a) analysis. *See* HQ 193658 (July 20, 2015). Because Heading 9021 describes the mastectomy bra with greater specificity than the *eo nomine* provision of Heading 6212, Heading 9021 is the proper classification.

---

[18] "Resort to this aid to statutory construction is not obligatory, however, as it is merely a "*convenient rule of thumb for resolving issues where the competing provisions are otherwise in balance." Orlando Food Corp*., 140 F.3d at 1441.

[19] A heading is considered a principle use provision if it "classifies a particular article according to its ordinary commercial use, even though that article may, at times, be put to some atypical use." *ME Glob., Inc. v. United States*, 633 F. Supp. 3d 1349, 1360 (Ct. Int'l Trade 2023). In order to be classified under Heading 9021 an article (e.g. artificial breast from) must "compensate for a defect or disability." Thus, the Heading 9021 is a principle use provision. Amoena MBs should be classified in Heading 9021 as they are solely or principally used as an accessory to the breast form.

## CONCLUSION

The subject MBs are classifiable as accessories to artificial parts of the body under subheading 9201.39.00, HTSUS.  For the foregoing reasons, plaintiff respectfully requests that the Court grant its motion for summary judgment and order Customs to reliquidate the subject entries with classification of the subject merchandise under 9201.39.00, HTSUS, and to refund the excess duties paid with interest as provided by law.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
Tel. (212) 557-4000
JSpraragen@gdlsk.com

By:     /s/ Joseph M. Spraragen
          Robert B. Silverman
          Katherine A. Dobscha
          Joseph M. Spraragen

Dated: November 21, 2024
          New York, New York

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to USCIT Standard Chambers Procedures Rule 2(B), I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 7,152 words including text, headings, footnotes, and quotations.  This word count is within the limit of 14,000 words set forth in Rule 2(B).

<u>/s/ Robert B. Silverman</u>
Robert B. Silverman
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
599 Lexington Avenue, FL 36
New York, New York 10022

Dated: November 21, 2024
        New York, New York

12936613_1