UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *JUDGE*

_____
                                                  :
AMOENA USA CORP.,                                 :
                                                  :
                          Plaintiff,              :        Court No. 20-00100
                                                  :
              v.                                  :
                                                  :
UNITED STATES,                                    :
                                                  :
                          Defendant.              :
_____:

## <u>JUDGMENT ORDER</u>

Upon reading plaintiff's motion for summary judgment; defendant's cross-motion for summary judgment; plaintiff's response and reply; defendant's reply; and upon other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment be, and hereby is, granted; and it is further

**ORDERED** that this action is dismissed.


                                                  _____
                                                  Leo M. Gordon, Judge


Dated: _____

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *JUDGE*

_____
                                                    :
AMOENA USA CORP.,                                   :
                                                    :
                            Plaintiff,              :          Court No. 20-00100
                                                    :
                    v.                              :
                                                    :
UNITED STATES,                                      :
                                                    :
                            Defendant.              :
_____ :

## <u>**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, United States, respectfully moves this Court for an Order: (1) denying plaintiff's motion for summary judgment; (2) granting our cross-motion for summary judgment; and (3) dismissing this action in its entirety.

The bases for defendant's cross-motion for summary judgment are set forth in the attached memorandum, the case pleadings, the parties' Joint Statement of Material Facts Not in Dispute (ECF 52-1), defendant's response to plaintiff's Rule 56.3 statement of material facts, and the exhibits submitted with defendant's cross-motion for summary judgment.

**WHEREFORE**, defendant respectfully requests that an Order be entered (1) denying plaintiff's motion for summary judgment; (2) granting our cross-motion for summary judgment; (3) dismissing this action in its entirety; and (4) granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*OF COUNSEL*                              /s/ Beverly A. Farrell
FARIHA KABIR                              BEVERLY A. FARRELL
Office of Assistant Chief Counsel         Senior Trial Attorney
International Trade Litigation            Department of Justice, Civil Division
U.S. Customs and Border Protection        Commercial Litigation Branch
                                          26 Federal Plaza, Room 346
                                          New York, New York 10278
                                          Tel.: (212) 264-0483 or 9230
                                          Attorneys for Defendant

Dated:  March 7, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *JUDGE*

_____
                                                    :
AMOENA USA CORP.,                      :
                                                    :
                            Plaintiff,           :
                                                    :          Court No. 20-00100
                v.                                :
                                                    :
UNITED STATES,                           :
                                                    :
                            Defendant.        :
                                                    :
_____:


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND IN
<u>SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**


                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General
                                        Civil Division

                                        PATRICIA M. McCARTHY
                                        Director

                                        JUSTIN R. MILLER
                                        Attorney-In-Charge
                                        International Trade Field Office

*OF COUNSEL*:
FARIHA KABIR                            BEVERLY A. FARRELL
Office of Assistant Chief Counsel       Senior Trial Attorney
International Trade Litigation           Department of Justice, Civil Division
U.S. Customs and Border Protection      Commercial Litigation Branch
                                        26 Federal Plaza, Room 346
                                        New York, New York 10278
                                        Tel.: (212) 264-0483 or 9230
                                        Attorneys for Defendant

Dated: March 7, 2025

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................. 2

TARIFF PROVISIONS AT ISSUE ................................................................................... 3

QUESTIONS PRESENTED ............................................................................................... 3

SUMMARY OF ARGUMENT ......................................................................................... 4

ARGUMENT ...................................................................................................................... 6

I.     THE SUBJECT MERCHANDISE ARE *EO NOMINE* BRASSIERES OF HEADING
6212, AND PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF PROVING THAT
AN ALTERNATIVE HEADING PROVIDES A BETTER CLASSIFICATION FOR
THE MERCHANDISE ....................................................................................................... 6

    A. Standard Of Review .............................................................................................. 6

    B. The Legal Standard For Summary Judgment ....................................................... 8

    C. The Subject Merchandise Satisfies The Definition Of Brassiere ......................... 9

    D. The Subject Merchandise Is Not An Accessory To An Artificial Body Part ..........14

    E. Even If The Subject Are Prima Facie Classifiable In Heading 6212 And Heading
9021, Under GRI 3(a) The Brassieres Are Properly Classified In Heading
6212……………………………………………………………………………..   15

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

### Cases

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970)..........................................................................................9

*AGFA Corp. v. United States*,
  520 F.3d 1326 (Fed. Cir. 2008)........................................................................8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)……………………….                                                                8, 9

*Bausch & Lomb, Inc. v. United States*,
  957 F. Supp. 281 (Ct. Int'l Trade 1997) ..........................................................8

*CamelBak Prods. v. United States*,
  649 F.3d 1361 (Fed. Cir. 2011)......................................................................13

*Carl Zeiss, Inc. v. United States*,
  195 F.3d 1375 (Fed. Cir. 1999).........................................................10, 11, 13

*Casio, Inc. v. United States*,
  73 F.3d 1095 (Fed. Cir. 1996)........................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................8

*Chemtall, Inc. v. United States*,
  878 F.3d 1012 (Fed. Cir. 2017)........................................................................7

*Chrysler Corp. v. United States*,
  601 F. Supp. 2d 1347 (Ct. Int'l Trade 2009) ..................................................6

*Degussa Corp. v. United States*,
  508 F.3d 1044 (Fed. Cir. 2007)........................................................................8

*Ford Motor Co. v. United States*,
  926 F.3d 741 (Fed. Cir. 2019……………………………………………………12

*GRK Canada, LTD. v. United States*,
  761 F.3d 1354 (Fed. Cir. 2014)......................................................................12

*Jarvis Clark Co. v. United States*,
  733 F.2d 873 (Fed. Cir. 1984)..........................................................................7

*Kahrs Int'l, Inc. v. United States*,
   713 F.3d 640 (Fed. Cir. 2013)..................................................................13

*Lemans Corp. v. United States*,
   660 F.3d 1311 (Fed. Cir. 2011)................................................................7

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................8-9

*ME Global, Inc. v. United States*,
   633 F. Supp. 3d (Ct. Int'l Trade 2023) .................................................10

*Mita Copystar Am. v. United States*,
   427 F. Supp. 3d 1362, 1364–65 (Ct. Int'l. Trade 2020) .........................6

*Motorola, Inc. v. United States*,
   436 F.3d 1357 (Fed. Cir. 2006)...............................................................8

*The Pomeroy Collection, Ltd. v. United States*,
   559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) ..........................................7

*R.T. Foods, Inc. v. United States*,
   757 F.3d 1349 (Fed. Cir. 2014).......................................................13, 14

*Rollerblade, Inc. v. United States*,
   116 F. Supp. 2d 1247 (Ct. Int'l. Trade 2000) ...................................5, 14

*Simod Am. Corp. v. United States*,
   872 F.2d 1572 (Fed. Cir. 1989)...............................................................9

*Texas Apparel Co. v. United States,*
   698 F. Supp 932 (Ct. Int'l Trade 1988) ..................................................8

*Totes, Inc. v. United States,*
   69 F.3d 495 (Fed. Cir. 1995)..................................................................16

*Trumpf Med. Sys., Inc. v. United States*,
   753 F. Supp. 2d 1297 (Ct. Int'l Trade 2010) ..........................................7

*Victoria's Secret Direct, LLC v. United States,*
   908 F. Supp. 2d 1332 (Ct. Intl. Trade 2018)....................4, 9-10, 12, 13

## Harmonized Tariff Schedule of the United States (HTSUS)

Chapter 90 Note 1(b) ..............................................................................15

General Rule of Interpretation 1 ...................................................................... 7

General Rule of Interpretation 3(a) ...................................................... 6, 15, 16

Heading 6212 .............................................................................................. *passim*

    Subheading 6212.10.90 ..................................................................... 2, 3, 6

Heading 9021 .............................................................................................. *passim*

    Subheading 9021.39.00 ........................................................................ 2, 3

## **Statutes**

28 U.S.C. § 2639(a)(1) ........................................................................................ 6

## **Other Authorities**

Explanatory Note 62.12 ..................................................................................... 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. LEO M. GORDON, *JUDGE*

_____
|                                       :
AMOENA USA CORP.,                       :
|                                       :
|        Plaintiff,        :        Court No. 20-00100
|                                       :
|     v.                      :
|                                       :
UNITED STATES,                          :
|                                       :
|        Defendant.       :
_____:

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, United States (the Government), respectfully submits this memorandum of law in opposition to plaintiff's, Amoena USA Corp. (Amoena), motion for summary judgment, and in support of our cross-motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of International Trade (CIT). For the reasons set forth below, we respectfully request that the Court enter a judgment order denying plaintiff's motion for summary judgment; granting our cross-motion for summary judgment; and dismissing this action in its entirety.

As we demonstrate below, the subject merchandise is properly classified *eo nomine* under Heading 6212, Harmonized Tariff Schedule of the United States (HTSUS), as a brassiere.  That Amoena's brassieres are designed with a pocket capable of holding an insert neither renders the subject merchandise an accessory nor removes it from the

common meaning of a brassiere.  Therefore, the subject merchandise is properly classified under subheading 6212.10.90, HTSUS.[1]

## **FACTUAL BACKGROUND**

In advance of the filing of dispositive motions, the parties reached an agreement on certain undisputed facts and submitted to the Court a Joint Statement of Material Facts Not in Dispute (JSMF).  ECF 52-1.  In the JSMF, the parties agree that the imported merchandise at issue in this matter are mastectomy brassieres, which were the subject of a single entry on April 25, 2016.  JSMF ¶ 1.  Submitted to the Court in connection with our cross-motion are samples of styles of the Amoena brassieres at issue: Mona 0591 (Def. Ex. 11), Lara SB 0675 (Def. Ex. 5), Lara SB 0647 (Def. Ex. 4), Lara Satin SB 44214 (Def. Ex. 6), Ester SB 42576 (Def. Ex. 12), Barbara WB 0457 (Def. Ex. 7), Magdalena SB 0463 (Def. Ex. 8), Isadora SB 0947 (Def. Ex. 10), and Nancy SB 1151 (Def. Ex. 9).  JSMF ¶ 3.[2]

U.S. Customs and Border Protection (Customs or CBP) classified the subject merchandise upon liquidation of the entry at issue under subheading 6212.10.90, HTSUS, with a 16.9 percent *ad valorem* duty rate.  JSMF ¶¶ 4, 5.  Plaintiff asserts that the imported merchandise should be classified under subheading 9021.39.00, HTSUS, duty free, as parts and accessories of other artificial parts of the body.  JSMF ¶¶ 7, 8.  The parties agree that plaintiff timely protested the liquidation of the entry at issue and that

---

[1] Subheading 6212.10.90 provides: "[b]rassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted: [b]rassieres: [o]ther."

[2] To avoid confusion, we are using the same exhibit designations as those used during the CIT Rule 30(b)(6) deposition of Amoena.

CBP denied this protest.  JSMF ¶¶ 6, 9.  Plaintiff paid all liquidated duties prior to its

timely commencement of this action.  JSMF ¶¶ 9, 10.

**TARIFF PROVISIONS AT ISSUE**

| **Heading/Subheading** | **Description** |
|---|---|
| 6212 | Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted: |
| 6212.10 | Brassieres: |
| 6212.10.90 | Other……………16.9% |
| 9021 | Orthopedic appliances, including crutches, surgical belts and trusses; splints and other fracture appliances; artificial parts of the body; hearing aids and other appliances which are worn or carried, or implanted in the body, to compensate for a defect or disability; parts and accessories thereof: |
| | Other artificial parts of the body and parts and accessories thereof: |
| 9021.39.00 | Other……………duty free |

**QUESTIONS PRESENTED**

1.  Whether the subject mastectomy brassieres are classifiable as *eo nomine*

    brassieres of heading 6212, HTSUS.

2.  Whether the subject mastectomy brassieres are accessories of heading 9021,

    HTSUS.

3.  Whether, if the subject mastectomy brassieres are classifiable under both

    heading 6212 and 9021, heading 6212, HTSUS, more specifically describes

    the articles.

## SUMMARY OF ARGUMENT

Samples of the subject merchandise are available for the Court. A visual review of them establishes that there is no dispute that the goods at issue in this action are brassieres classifiable as such under heading 6212. The breast forms referenced by plaintiff in its motion for summary judgment were not imported as part of the entry at issue in this action. A brassiere has been defined by this Court as a "woman's close-fitting undergarment having cups for bust support, varying in width from a band to a waist length bodice, made with or without straps, and often boned or wired for additional support or separation; also: an adaptation of this garment for sportswear"; "woman's undergarment worn to support the breasts" and "shaped undergarment worn by women to mold and support the breasts." *Victoria's Secret Direct, LLC v. United States*, 908 F. Supp. 2d 1332, 1354 (Ct. Int'l Trade 2013). The subject merchandise satisfies these definitions.

Plaintiff has provided information and declarations to support its position that the subject brassieres are designed and intended for use by women who have had single or double mastectomies or lumpectomies and that, because plaintiff intends the merchandise to be used by such women, this changes the classification of the good. Plaintiff is incorrect in its analysis. Because an *eo nomine* term covers all forms of the named article, that term should not be limited by use unless the term itself inherently suggests a type of use. Here, no such use limitation is suggested by the term "brassieres." Indeed, the Explanatory Notes to heading 6212 make this clear and reinforce this principle by stating that the heading includes "brassieres of all kinds." These notes further provide that these "brassieres of all kinds" "may incorporate fittings and accessories of non-

textile materials." Thus, a mastectomy brassiere, which may incorporate a breast form, such as the merchandise here, is fully described by heading 6212.

Plaintiff's preferred classification of the subject brassieres as accessories of heading 9021 should be rejected. First, the brassieres are not accessories of the breast form. If anything, the breast forms are accessories of the brassieres. This Court has noted that the tariff does not define the term accessory and, therefore, it should be interpreted based on its common meaning. In *Rollerblade*,[3] this Court provided several definitions for accessory such as: a thing of secondary or subordinate importance, adjunct; an object or device not essential in itself but adding to the beauty, convenience or effectiveness of something else; a subordinate part or supplementary part, object or the like used mainly for convenience, attractiveness, safety, etc; additional or subordinate thing, adjunct; article not absolutely essential that adds attractiveness, convenience, effectiveness, or safety to something else.

Here, the breast forms are subordinate to the brassiere. The forms cannot function without the brassiere. Thus, while a woman can wear a brassiere without the breast form, she cannot wear the breast form without the brassiere to hold it. In this context, it is the breast form that is optional and subordinate to the brassiere. Therefore, it falls directly within the common meaning of accessory. A brassiere, on the other hand, is essential if a woman opts to use a breast form. Because the brassiere is essential, it does not meet the common meaning of accessory.

---

[3] *Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1252 (Ct. Int'l Trade 2000) *aff'd* 282 F.3d 1349 (Fed. Cir. 2002).

But even if the brassieres could be construed as accessories of heading 9021, under Rule 3(a) of the General Rules of Interpretation, which calls for classification under the "heading which provides the most specific description," the subject merchandise would be classifiable under heading 6212, not heading 9021, because the term brassiere is more specific than the term accessory. A brassiere has a specific definition and identity whereas an accessory can include a wide variety of items having many different functions.

Because there are samples and no material disputes as to the imported merchandise, determining the proper classification of the mastectomy brassieres collapses into a question of law. Based on the common meaning of the terms brassiere and accessory, the imported merchandise should be classified as brassieres of heading 6212, and more specifically under subheading 6212.10.90.

## **ARGUMENT**

**I.    THE SUBJECT MERCHANDISE ARE *EO NOMINE* BRASSIERES OF HEADING 6212, AND PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF PROVING THAT AN ALTERNATIVE HEADING PROVIDES A BETTER CLASSIFICATION FOR THE MERCHANDISE**

### **A.    Standard Of Review**

This Court "reviews Customs' protest decisions *de novo*." *Chrysler Corp. v. United States*, 601 F. Supp. 2d 1347, 1350 (Ct. Int'l Trade 2009). However, Customs' decisions are statutorily entitled to a presumption of correctness. 28 U.S.C. § 2639(a)(1) ("the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision."); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994) (the party challenging the classification

6

has the burden of overcoming this presumption). To determine whether an importer has overcome this presumption, the Court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed.Cir.1984). "Ordinarily it will be difficult to meet this burden of proof without proposing a better classification." *Id.*

In conducting its classification review, the Court engages in two steps. *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1018 (Fed. Cir. 2017). The Court determining the meaning of the tariff term as a matter of law and then determines whether the subject merchandise falls within those terms. *Id.* When "there is no dispute about the nature of the merchandise, the two step inquiry 'collapses into a question of law . . . .'" *Id.* (quoting *Lemans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011).

Further, the General Rules of Interpretation ("GRI") along with the Additional United States Rules of Interpretation are used to interpret and apply the HTSUS. *Trumpf Med. Sys., Inc. v. United States*, 753 F. Supp. 2d 1297, 1305 (Ct. Int'l Trade 2010). GRI 1 calls for classification "'according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following [GRIs 2 through 6].'" *The Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385 (Ct. Int'l Trade 2008) (emphasis omitted). The GRIs are to be applied sequentially. *Id.*

To interpret the tariff headings, courts look to the language of the headings, subheadings, section notes and chapter notes of the HTSUS. *Trumpf*, 753 F. Supp. 2d at 1305. Interpretive assistance may be provided to the courts by the Explanatory Notes

published by the World Customs Organization which, while not controlling, may help to clarify the scope of the HTSUS. Although the Explanatory Notes are not legally binding, they may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision. *AGFA Corp. v. United States*, 520 F.3d 1326, 1330 (Fed. Cir. 2008) (citing *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007); *Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006). Additionally, in determining whether an item is properly classified under a particular heading in the HTSUS, the Explanatory Notes may be persuasive authority when they specifically include or exclude an item from a tariff heading. *See, e.g., Bausch & Lomb, Inc. v. United States*, 957 F. Supp. 281, 288 (CIT 1997), *aff'd*, 148 F.3d 1363 (Fed. Cir. 1998).

### B. Legal Standard For Summary Judgment

Under CIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must determine "whether there are any factual disputes that are material to the resolution of the action." *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

In determining whether a genuine, material issue of fact exists, a court reviews the evidence submitted drawing all inferences against the moving party. *See Matsushita*

*Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial.  *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249;

There is no material dispute about the nature of the imported merchandise.  There are samples of the merchandise that we are submitting to the Court in conjunction with our cross-motion for summary judgment.  And it is well-settled that in classification actions the "merchandise itself is often a potent witness."  *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989) (citation omitted).  That is the case here.  These samples are witnesses that satisfy the definition of brassiere.

### C.    The Subject Merchandise Satisfies The Definition Of Brassiere

CBP classified the subject merchandise under heading 6212, HTSUS, which includes the *eo nomine* term brassiere.  Amoena contends that its mastectomy brassieres are not brassieres and points to this Court's decisions in *Victoria's Secret Direct, LLC v. United States*, 908 F. Supp. 2d 1332, 1353(Ct. Int'l Trade 2013) and *Lerner New York v. United States*, 908 F. Supp. 2d 1313, 1326 (Ct. Int'l Trade 2013), *aff'd* 769 F.3d 1102 (2014) as support for the proposition that "there is no 'standard definition of the term brassiere'" Pl. Br. at 7-8.  This position misconstrues the Court's analysis.  The Court did not assert that no standard definition of brassiere exists.  In fact, it provided definitions.  Instead, the Court concluded that its "research has not found a standard definition of the term 'brassiere' *to which the Bra Top conforms*. . . ."  *Victoria's Secret*, 908 F. Supp. 2d

9

at 1353-54 (emphasis added).  In rejecting Victoria's Secret's argument that its Bra Top was in fact a brassiere, this Court found that "one Webster's definition of 'brassiere' is a 'woman's close-fitting undergarment having cups for bust support, varying in width from a band to a waist length bodice, made with or without straps, and often boned or wired for additional support or separation; also: an adaptation of this garment for sportswear.'" *Id.* at 1354.  The *Victoria's Secret* Court further noted that the "*Oxford English Dictionary* defines a brassiere as '[a] woman's undergarment worn to support the breasts'" and the "Fairchild Dictionary specifies that a brassiere is "[a] shaped undergarment worn by women to mold and support the breasts.'"  *Id.* at 1354 n.20.

As reflected by Defendant's Exhibits 4-11, the subject merchandise is a close-fitting undergarment with cups for bust support made with or without straps.  This satisfies the definition of a brassiere, an *eo nomine* terms of heading 6212, HTSUS.  "An *eo nomine* tariff provision 'is one which describes a commodity by a specific name, rather than by use, and absent limitation or contrary legislative intent. . .  includes all forms of the named article, even improved forms.'" *ME Global, Inc. v. United States*, 633 F. Supp. 3d 1349, 1360 (Ct. Int'l Trade 2023) (quoting *Well Luck Co. v. United States*, 887 F.3d 1106, 1111 n.4 (Fed. Cir. 2018) (cleaned up)); *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (same) (affirming CBP's classification of imported product ZMS 319 as an *eo nomine* stereoscopic compound microscope of heading 9011 rather than as an instrument and appliances used in medical, surgical, dental or veterinary sciences under heading 9018, even though the good only has surgical uses, because the *eo nomine* provision more specifically described the merchandise).

The situation here somewhat resembles that of the *Carl Zeiss* case. There, a stereoscopic compound microscope was described *eo nomine* in heading 9011. However, the facts established that the exclusive use for this microscope was surgical. Therefore, the microscope was found to be *prima facie* classifiable in heading 9018 as an instrument used in medical and surgical sciences. This exclusive use of the microscope was irrelevant to whether it fell within the *eo nomine* provision for compound optical microscope of heading 9011. In ultimately classifying the microscope in heading 9011, the Federal Circuit held that the heading providing the most specific description, *i.e.*, describing the article with the greatest degree of accuracy and certainty, would prevail over a provision supplying a more general description. Although, as discussed below, we reject plaintiff's argument that the mastectomy brassieres at issue are *prima facie* classifiable under heading 9021 as accessories of artificial parts of the body, even if they were, heading 6212 nevertheless would prevail because it provides the most specific description with the greatest degree of accuracy and certainty.

By satisfying the common meaning of brassiere, the imported goods are *eo nomine* brassieres of heading 6212. Further, because the heading contains no terms of limitation, how the article is used is irrelevant to whether it falls under heading 6212 as a "brassiere." *See Carl Zeiss*, 195 F.3d at 1379 (where article was *prima facie* classifiable in a principal use provision, "the fact that the [imported article's] exclusive use is surgical is irrelevant to the question whether it falls under the *eo nomine* provision").

Amoena attempts to distinguish the subject merchandise from brassieres by arguing that the subject mastectomy brassieres are sold to different customers than are brassieres, which are sold to women, whereas the subject merchandise is sold to a small

subset of women.  Pl. Br. at 9.  Plaintiff's point that women buy brassieres and a subset of

them buy the subject merchandise supports, rather than refutes, that the subject

merchandise is properly classified under heading 6212 as brassieres.  Indeed, as noted in

*Victoria's Secret*, sports bras, which are sold to the subset of women who need a bra that

provides support when engaging in athletics, remain classifiable under heading 6212.  *See*

908 F. Supp. 2d at 1354.  Thus, a brassiere is a well-known, visually identifiable, *eo*

*nomine* article of the tariff that possesses cups and provides support to a woman's bust.

Moreover, it is well-settled that "a use limitation should not be read into an *eo*

*nomine* provision unless the name itself inherently suggests a type of use."  *Carl Zeiss*,

195 F.3d at 1379.  The tariff term "brassiere" does not suggest a type of use, nor does it

lend itself to a use limitation.

There are times when consideration of use may assist the Court in determining the

classification of an *eo nomine* article.  For example, in *GRK Canada, LTD. v. United*

*States*, 761 F.3d 1354, 1359 (Fed. Cir. 2014) this issue was whether the subject screws

were wood screws of subheading 7318.12.00 or self-tapping screws of subheading

7318.14.10.  The term wood screws inherently implicated use because such screws are

used to anchor in wood.  Therefore, knowing whether the screws were used to anchor in

wood would help to distinguish between the subheadings.  Similarly, in *Ford Motor Co.*

*v. United States*, 926 F.3d 741, 750 (Fed. Cir. 2019), the issue of whether temporary rear

seating would result in classification under heading 8703 as "[m]otor cars and other

motor vehicles principally designed for the transport of persons" inherently implicated

the use of the vehicle.  Unlike the "other wood screws" of *GRK* or the *Ford* vehicles,  a

"brassiere" does not implicate use. Therefore, what falls within the classification of that tariff term should not be narrowed based on the use of the item.

And as the *Victoria's Secret* Court recognized, the Explanatory Note to heading 6212, EN 62.12, "instructs that the heading includes '[b]rassieres of all kinds.'" 908 F. Supp. 2d at 1354. Therefore, any improvements to the form of a brassiere, such as including a stretchable pocket to hold a breast form or padding or providing flaps that can be opened to aid breastfeeding, or using wider shoulder straps and a wider under band to provide more support to heavier busted women do not alter its fundamental identity as a brassiere and, therefore, will not remove it from heading 6212, HTSUS, as an *eo nominee* brassiere.

The Explanatory Notes for heading 6212 also state that all the articles of this heading "may be furnished with trimmings of various kinds (ribbons, lace, etc.) and may incorporate fittings and accessories of non-textile materials (e.g. metal, rubber, plastics or leather)." EN 62.12. Here, the subject mastectomy brassieres incorporate breast forms comprised of non-textile materials. Def. Ex. 1 (Excerpt of Rule 30(b)(6) Deposition of Amoena). Accordingly, the Explanatory Notes further reveal that mastectomy brassieres designed to incorporate the accessory of a breast form are included among the brassieres of all kinds. This is consistent with the long line of cases holding that "[A]n eo nomine provision includes all forms of the named article, including improved forms." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) (quoting *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 646 (Fed. Cir. 2013) (itself citing *CamelBak Prods. v. United States*, 649 F.3d 1361, 1364–65 (Fed. Cir. 2011) (citing *Carl Zeiss*, 195 F.3d at 1379)).

13

These cases only permit an exception to this rule when an article is something other than that described by a specific statutory provision.  *See R.T. Foods*, 649 F.3d at 1365 (citing *Casio, Inc. v. United States*, 73 F.3d 1095, 1097 (Fed. Cir. 1996).  In other words, has there been a change in the identity of the article described by the statutory term where the item possesses features substantially in excess of common meaning of the term.  *Id.*  The answer, here, is no.  The imported articles are still *eo nomine* brassieres that provide support to a woman's bust, whether that bust be enhanced by a breast form or not.

### D.    The Subject Merchandise Is Not An Accessory To An Artificial Body Part

To avoid the fatal effect of its imported merchandise being described by the *eo nomine* term "brassiere," Amoena argues that its mastectomy brassieres are accessories to the breast form it may hold and, therefore, as properly classified in heading 9021.  Pl. Br. at 12-16.  Amoena is wrong.

This Court has noted that the tariff does not define the term "accessory" and, therefore, it should be interpreted based on its common meaning.  *Rollerblade , Inc. v. United States*, 116 F. Supp. 2d 1247, 1252 (Ct. Int'l Trade 2000) *aff'd* 282 F.3d 1349 (Fed. Cir. 2002).  In *Rollerblade*, this Court provided several definitions for accessory such as: a thing of secondary or subordinate importance, adjunct; an object or device not essential in itself but adding to the beauty, convenience or effectiveness of something else; a subordinate part or supplementary part, object or the like used mainly for convenience, attractiveness, safety, etc; additional or subordinate thing, adjunct; article not absolutely essential that adds attractiveness, convenience, effectiveness, or safety to something else.  116 F. Supp. 2d at 1252.

Here, the breast forms are subordinate to the brassiere. The forms cannot function without the brassiere. Thus, while a woman can wear a brassiere without the breast form, she cannot wear the breast form without the brassiere to hold it in place. In this context, it is the breast form, not the brassiere, that is optional. A brassiere, on the other hand, is essential if a woman opts to use a breast form. Because the brassiere is essential, it cannot satisfy the common meaning of the term accessory.

Plaintiff contends that Chapter 90 Note 1(b) is inapplicable to the subject brassieres because it does not apply to an artificial breast form or because the support of the breast form is not derived solely from the brassieres' elasticity. Pl. Br. at 16-20. First, we note that the organ to be held is not expressly limited to natural organs. Given that heading 9021 includes many items that serve as proxies to natural, bodily features, it would not be surprising that Note 1(b) could apply to artificial organs particularly given the reference to supports for joints, which are often replaced as a person ages. As to plaintiff's elasticity point, arguably, the subject mastectomy brassieres could be excluded from heading 9021 because the breast forms can only be introduced into subject brassieres because the pockets are sufficiently elastic to allow a breast form to be placed into the pocket. However, because as we show above that the brassieres are not accessories of heading 9021, there is no need to reach the Note 1(b) issue.

### E.    Even If The Subject Are Prima Facie Classifiable In Heading 6212 And Heading 9021, Under GRI 3(a) The Brassieres Are Properly Classified In Heading 6212

But even if the brassieres could be interpreted as accessories of heading 9021, the two competing headings would need to be construed under Rule 3(a) of the General Rules of Interpretation. GRI 3(a) calls for classification under the "heading which

provides the most specific description." Thus, the subject merchandise would be classifiable under heading 6212, not heading 9021, because the term brassiere is more specific than the term accessory. A brassiere has a specific definition and identity whereas an accessory can include a wide variety of items having many different functions.

The Federal Circuit had an opportunity to opine on this very comparison in *Totes, Inc. v. United States*, 69 F.3d 495 (Fed. Cir. 1995). There, the subject merchandise, the Totes Trunk Organizer, was *prima facie* classifiable in two competing headings: heading 4202 as a similar container and heading 8708 as a motor vehicle accessory. To determine the proper heading, GRI 3(a) was used to determine which heading provided greater specificity. The appellate court concluded that the competing provisions were not equal. 69 F.3d at 499. It found that the tariff provision for "similar containers" more specifically described the trunk organizer, finding that containers "essentially have the one principal function of containing, even though encompassing a wide variety thereof." *Id.* In comparison, the Federal Circuit found that the term accessory could "include a wide variety of items having many functions." As a result, using the greater specificity doctrine, the Federal Circuit rejected classification of the Totes Trunk Organizer as a motor vehicle accessory. *Id.* Because a brassiere has the principal function of providing support to a woman's bust, it is more specific than parts and accessories of heading 9021, which are not limited to artificial parts of the body, but instead may be parts or accessories for "[o]rthopedic appliances, including crutches, surgical belts and trusses; splints and other fracture appliances; artificial parts of the body; hearing aids and other

appliances which are worn or carried, or implanted in the body, to compensate for a defect or disability."  Heading 9021, HTSUS.

Because heading 6212 provides the more specific description of the imported articles, the Court should affirm CBP's classification determination.

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests that judgment be entered denying plaintiff's motion for summary judgment, granting defendant's cross-motion for summary judgment and dismissing this action in its entirety, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*OF COUNSEL*                      /s/ Beverly A. Farrell
FARIHA KABIR                      BEVERLY A. FARRELL
Office of Assistant Chief Counsel    Senior Trial Attorney
International Trade Litigation      Department of Justice, Civil Division
U.S. Customs and Border Protection   Commercial Litigation Branch
                                     26 Federal Plaza, Room 346
                                     New York, New York 10278
                                     Tel.: (212) 264-0483 or 9230
                                     Attorneys for Defendant

Dated:  March 7, 2025

17

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. LEO M. GORDON, *JUDGE*

_____
                                              :
AMOENA USA CORP.,                             :
                                              :
                        Plaintiff,            :           Court No. 20-00100
                                              :
            v.                                :
                                              :
UNITED STATES,                                :
                                              :
                        Defendant.            :
_____:

## <u>CERTIFICATE OF COMPLIANCE</u>

I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is the attorney responsible for Defendant's Memorandum of Law in Opposition to

Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for

Summary Judgment, relying upon the word count feature of the word processing program used

to prepare the response, certify that this memorandum complies with the word count limitation

under the Court's chambers procedures and contains 4,532 words.

<u>/s/ Beverly A. Farrell</u>
Beverly A. Farrell