UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. LEO M. GORDON, JUDGE

_____

|  |  |  |
|---|---|---|
| AMOENA USA CORP., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00100 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
(212) 557-4000

Robert B. Silverman
Katherine A. Dobscha
Joseph M. Spraragen

Dated: May 9, 2025
        New York, New York

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT ................................................................................................ 2

ARGUMENT ...................................................................................................................... 4

   I.    Uncontested Facts Should be Deemed Admitted Under USCIT Rule 56(e)(2). ............... 4

   II.   The Subject MBs Are Not *EO Nomine* Brassieres of Heading 6212. ............................. 5

      A.    The MBs Do Not Satisfy the Ordinary Meaning of Brassiere. .................................... 5

      B.    The Government Ignores the Design, Use, and Function of the MBs ....................... 8

   III. The MBs are an Accessory to an Artificial Body Part ........................................................ 10

      A.    The MBs are Principally Used as an Accessory to the Artificial Breast Forms ........ 10

      B.    Chapter 90 Note 1(b) Does Not Preclude Classifying the MBs in Heading 9021, HTSUS .................................................................................................................... 14

   IV.  Heading 9021, HTSUS Must Prevail over Heading 6212, HTSUS. ............................... 16

CONCLUSION…………………………………………………………………………..18

## **TABLE OF AUTHORITIES**

**Cases**

*Allstar Mktg. Grp., v. United States,* 211 F. Supp. 3d 1319 (Ct. Int'l Trade 2017) ........................ 8

*Amoena (UK) Ltd. v. Comm'rs for Her Majesty's Revenue & Customs,*
*[2016] UKSC 41 (S.C.)* ............................................................................................. 10, 13

*Amoena Austl. Pty Ltd v Chief Exec. Officer of Customs (2016) AATA 357 (Austl.)* ................. 13

*Apple Inc. v. United States*, 375 F. Supp. 3d 1288 (Ct. Int'l Trade 2019), *aff'd,* 964 F.3d 1087
    (Fed. Cir. 2020) .................................................................................................................. 10

*Avenues in Leather, Inc. v. United States*, 178 F.3d 1241 (Fed.Cir.1999) .................................... 7

*Avenues in Leather, Inc. v. United States*, 423 F.3d 1326 (Fed. Cir. 2005) ................................ 16

*CamelBak Prod., LLC v. United States*, 649 F.3d 1361 (Fed. Cir. 2011).............................. 3, 5, 9

*Carl Zeiss, Inc. v. United States,* 195 F.3d 1375 (Fed. Cir. 1999).................................................. 8

*Casio, Inc. v. United States*, 73 F.3d 1095 (Fed. Cir. 1996)........................................................... 9

*Ford Motor Co. v. United States*, 926 F.3d 741 (Fed. Cir. 2019).................................................. 8

*Gerson Co. v. United States*, 898 F.3d (Fed. Cir. 2018).............................................................. 16

*GRK Canada, Ltd. v. United States*, 761 F.3d 1354 (Fed. Cir. 2014) ...................................... 5, 8

*Jing Mei Auto. (USA) v. United States,* 682 F. Supp. 3d 1354 (Ct. Int'l Trade 2023) ................. 14

*Kahrs Int'l, Inc. v. United States*, 713 F.3d 640 (Fed. Cir. 2013) ................................................ 17

*Lerner New York v. United States*, 908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013)................... 5, 6, 7

*Mast Industries, Inc. v. United States*, 9 CIT 549, 1985 WL 25786 (1985), *aff'd* 786 F.2d 1144
    (Fed. Cir. 1986);.................................................................................................................. 9

*Miller Harness Co. v. United States*, 59 Cust. Ct. 1, C.D. 3053 (1967) ........................................ 5

*Rollerblade, Inc. v. United States,* 24 CIT 812, 116 F.Supp.2d 1247, *aff'd* 282 F.3d 1349 (Fed.
    Cir. 2002) .......................................................................................................................... 10

*Ross Products, Inc. v. United States*, 46 Cust. Ct. 8, C.D. 2226 (1961)......................................... 5

*Royal Bead Novelty Co. v. United States*, 342 F. Supp. 1394 (Cust. Ct. 1972).............................. 4

*Second Nature Designs Ltd. v. United States*, 660 F. Supp. 3d (Ct. Int'l Trade 2023).................. 9

*Sports Graphics, Inc. v. United States,* 24 F.3d 1390 (Fed.Cir.1994) ......................................... 17

*Totes, Inc. v. United States*, 69 F.3d 495 (Fed.Cir.1995)............................................................ 7, 19

*United Carr Fastener Corp. v. United States,* 54 CCPA 89 (1967) .................................................. 9

**United States v. Andrew Fisher Cycle Co. Inc**, 426 F.2d 1308 (C.C.P.A. 1970) .......................... 5

*United States v. Quon Quon Co*., 46 C.C.P.A. 70 (1959)................................................................ 9

*United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017) ................ 4

*Victoria's Secret Direct, LLC v. United States* 908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013), *aff'd*
  769 F.3d 1102 (2014)........................................................................................................ 5, 6, 7

*Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102 (Fed. Cir. 2014) ...................... 7, 8

*Wilton Indus., Inc. v. United States*, 31 C.I.T. (2007).................................................................. 14

**Other Authorities**
HQ H291901 (Sept. 19, 2019) ................................................................................................ 11, 15

NY N005512 (Feb. 2, 2007) ........................................................................................................ 11

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. LEO M. GORDON, JUDGE

_____
                                            :
AMOENA USA CORP.,                           :
                                            :     Court No. 20-00100
                Plaintiff,                  :
                                            :
        v.                                  :
                                            :
UNITED STATES,                              :
                                            :
                Defendant.                  :
_____ :

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN
OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

        This case concerns the tariff classification of Amoena USA Corp. ("Amoena")

mastectomy brassieres ("subject MBs") under the Harmonized Tariff Schedule of the United

States ("HTSUS"). Plaintiff respectfully submits this reply brief in response to defendant's ("the

Government") opposition plaintiff's motion for summary judgment and in response to

defendant's cross-motion for summary judgment. ECF No. 62 ("Defendant's Memorandum").

        The subject merchandise constitutes accessories to breast prosthesis forms, which are

artificial body parts. These artificial breast forms are classified by U.S. Customs and Border

Protection ("CBP") under subheading 9021.39.00, HTSUS which covers:

> Orthopedic appliances, including crutches, surgical belts and
> trusses; splints and other fracture appliances; artificial parts of the
> body; hearing aids and other appliances which are worn or carried,
> or implanted in the body, to compensate for a defect or disability;
> parts and accessories thereof: Other artificial parts of the body and
> parts and accessories thereof: Other, free of duty.

Accordingly, the subject merchandise is also properly classified as other artificial parts of the body and accessories thereof under subheading 9021.39.00, HTSUS.

For the reasons set forth below, plaintiff respectfully request that the Court enter a judgment order: (1) granting plaintiff's motion for summary judgment, (2) ordering Customs to reliquidate the subject entries with classification of the subject merchandise under 9021.39.00, HTSUS, and to refund the excess duties paid with interest as provided by law, and (3) denying defendant's cross-motion for summary judgment.

## SUMMARY OF ARGUMENT

The Government's arguments set forth in its response to plaintiff's motion for summary judgment and cross-motion for summary judgment should be rejected.

As a preliminary matter, Amoena petitions this Court to accept all facts on the record that have not been contested by the Government as true. A grant of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Court of International Trade ("USCIT") Rule 56(a). The material facts regarding the physical characteristics of the subject merchandise, its development, marketing, channels of sale, and intended uses are not contested. Accordingly, what remains is for the Court to determine whether plaintiff is entitled to judgment as a matter of law. The classification question before the Court is a question of law—whether the subject merchandise is classified in Heading 6212 or in Heading 9021.

As a matter of law, Amoena's Mastectomy Bras ("MB") cannot be classified under Heading 6212, HTSUS. The MBs do not satisfy the definition of "brassiere" as interpreted by this Court, nor do they qualify as a "similar article" under that heading. Notably, the Government relied on only one of three definitions of "brassiere" utilized by this Court—an

omission clearly addressed in this brief.  Moreover, even assuming the MBs fall within the scope of "brassiere" or "similar articles," they possess unique features specifically designed for use with breast prosthesis forms, which are special features "substantially in excess" of ordinary brassieres that preclude the MBs from classification in Heading 6212, HTSUS.  *CamelBak Prod., LLC v. United States*, 649 F.3d 1361, 1367 (Fed. Cir. 2011). The subject MBs are designed and intended to be worn, and are actually worn, by a small subset of women who have had single or double mastectomies or lumpectomies, and who have not had reconstructive surgery. The subject MBs are designed to hold artificial breast forms (prostheses) in place, and to cover scars and radiation burns of the cancer survivors who wear the subject MBs.

Amoena's MBs are accessories to artificial breast forms, which Customs has consistently found are classified in Heading 9021. Note 2 to HTSUS Chapter 90 mandates that parts and accessories of Chapter 90 are "in all cases to be classified in their respective headings . . . ." The MBs are specifically designed to be fitted with, and used in conjunction with, artificial breast forms and hold them in place to ensure that the breast form meets the medical and psychological needs of the wearer. Breast forms are often necessary for and used by female cancer survivors who have had a mastectomy or lumpectomies, and who have not had reconstructive surgery in order to keep the body aligned and prevent future physical injury. They are the component necessary to replace the natural breast that has been surgically removed, thereby helping to create the illusion of a natural breast throughout a full range of normal daily activity. Accordingly, the subject MBs simply assist the prosthetic breast forms in performing their intended function and are clearly an accessory to the form.

# ARGUMENT

## I. Uncontested Facts Should be Deemed Admitted Under USCIT Rule 56(e)(2).

If the Court deems it appropriate, unopposed factual assertions by a party are accepted as true when the opposing party fails to contest them. *See* USCIT Rule 56(e)(2) ("[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). In effect, where the non-moving party fails to respond or object to specific factual claims, the court may treat such failure as a waiver. *See United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1122 (Ct. Int'l Trade 2017) (treating facts as undisputed because a party failed to adequately address factual assertions on paper and at oral argument); *Id.* at 1122 n. 10. ("Because Defendants failed to properly address Plaintiff's factual assertion, which has evidentiary support, the court considers the assertion undisputed for purposes of summary judgment."); *Royal Bead Novelty Co. v. United States*, 342 F. Supp. 1394, 1399 (Cust. Ct. 1972) ("[D]efendant's failure to proffer specific facts in opposition by way of affidavit, deposition, admission or otherwise requires that the statements in plaintiff's supporting affidavit be accepted as true.").

The Government's reply brief and cross-motion for summary judgment were limited to issues of law and the Joint Statement of Material Facts. The Government failed to address several factual assertions established by Plaintiff through affidavits and other sources found on the record. And the Government did not offer any evidence or other authority to support any of its factual disagreements. Accordingly, Plaintiff takes the position that any factual assertions not specifically contested by defendant with supporting authority should be accepted as true for purposes of plaintiff's summary judgment motion.

4

**II.**    **The Subject MBs Are Not *Eo Nomine* Brassieres of Heading 6212.**

The MBs are not properly classified under Heading 6212 for two reasons.  First, the MBs do not satisfy the common meaning of the terms "brassiere" or "similar articles" under Heading 6212 as interpreted by this Court and the Federal Circuit in *Lerner* and *Victoria Secret*.  *See Lerner New York v. United States*, 908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013; *Victoria's Secret Direct, LLC v. United States*, 908 F. Supp. 2d 1332 (Ct. Int'l Trade 2013) *aff'd* 769 F.3d 1102 (2014).  Second, even assuming that the MBs fall within the general definition of brassiere, their design, use, and function are substantially different and "substantially in excess" of ordinary brassieres. *CamelBak*, 649 F.3d at 1367. As such, they are not classifiable under Heading 6212.

Further, as set forth in Sections III and IV, the MBs are specifically provided for in heading 9021 and therefore are properly classified thereunder as accessories to artificial breast forms. Therefore, by application of General Rule of Interpretation ("GRI") 1, the MBs must be classified in heading 9021 and not in heading 6212.

**A.  The MBs Do Not Satisfy the Ordinary Meaning of Brassiere.**

As a preliminary matter, the Government submits that a straightforward "visual review," coupled with the fact that heading 6212 is an *eo nomine* provision, renders the MBs as brassieres under heading 6212.  The law is not that straightforward as an *eo nomine* provision does not encompass everything literally within the term.[1]  To determine the scope and applicability of Heading 6212, the proper first step under Rule 1 of the General Rules of Interpretation is to

---

[1] *See United States v. Andrew Fisher Cycle Co. Inc*, 426 F.2d 1308, 1311 (C.C.P.A. 1970) (holding bicycle saddles are not classifiable as saddles); *C. J. Tower & Sons v. United States*, 44 CCPA 41, C.A.D. 634 (1957) (holding fresh green corn-on-the-cob is not classifiable as corn); *Miller Harness Co. v. United States*, 59 Cust. Ct. 1, C.D. 3053 (1967) (holding curry combs are not combs); *Ross Products, Inc. v. United States*, 46 Cust. Ct. 8, C.D. 2226 (1961) (not all dishes are used for serving); *GRK Canada, Ltd. v. United States*, 761 F.3d 1354, 1358 (Fed. Cir. 2014) (explaining that merchandise sharing a name with a tariff heading is not always properly classified in that heading).

consider the terms of the heading itself.  Because both this Court and the Federal Circuit have interpreted heading 6212, we begin by examining whether the MBs fall within judicial interpretations of the heading.

Based on research conducted by this Court, no "standard definition" of the term brassiere exists.  *Lerner* 908 F. Supp 2d 1313 at 1326; *Victoria's Secret* 907 F. Supp 2d 1332 at 1353–54. Nevertheless, both opinions provided three definitions.  One definition being, "woman's close-fitting undergarment having cups for bust support, varying in width from a band to a waist length bodice, made with or without straps, and often boned or wired for additional support or separation; also: an adaptation of this garment for sportswear." *Victoria's Secret* 907 F. Supp 2d 1332 at 1354. (quoting *Webster's Dictionary* 269).  Another defines it as "[a] woman's undergarment worn to support the breasts," and a third as "[a] shaped undergarment worn by women to mold and support the breasts."  *Id.* at 1354, n. 20 (quoting *Oxford English Dictionary* 494 (2d ed. 1989)); *Id.* at 1354, n. 20 (quoting *Fairchild Dictionary* 463)).

The Government's brief overlooks the full scope of definitions provided by this Court, relying exclusively on the first definition of brassiere—that the "subject merchandise is a close-fitting undergarment with cups made for bust support made with or without straps"—to find that the MBs satisfies the definition of brassiere.  Def.'s Mem. at 10. The Government is wrong that this definition describes the Amoena MBs as their principal functions are to hold artificial breast forms in place and cover scar tissue resulting from mastectomies.  Moreover, the Government's brief fails to address the other definitions cited by this Court, which clearly do not encompass the subject MBs.[2]  The Government's selective choice of a definition suggests that the first

---

[2] The MBs provide support for breast forms, not breasts and therefore cannot satisfy the second or third definition provided by this Court.  Although the MBs, may support a singular breast for users who have underwent a single mastectomy, these instances are outside the coverage of the provided definitions because they refer to "breasts" plural.

definition is dispositive when in fact, the Court's analysis was more nuanced. Since the MBs do not satisfy the definitions of brassiere as provided by this Court, the MBs are not brassieres under heading 6212.

The MBs also do not fall under the term "similar articles" under heading 6212. For classifications applying the phrase "similar articles" the statutory constriction principle of *ejusdem generis* is applied. *Lerner*, 908 F. Supp. 2d 1313 at 1327. Under this principle, merchandise that possess the "same essential characteristics or purposes that unite the listed examples preceding the general term or phrase" are classified within that heading. *Avenues in Leather, Inc. v. United States,* 178 F.3d 1241, 1244 (Fed.Cir.1999) (citing *Totes, Inc. v. United States,* 69 F.3d 495, 498 (Fed.Cir.1995)).

In applying this principle to heading 6212, this Court held that the essential characteristic of heading 6212 was "either support of a part of the *body* or support of a *garment*." *Victoria's Secret Direct, LLC v. United States* 908 F. Supp. 2d 1313, 1327 (Ct. Int'l Trade 2013), aff'd 769 F.3d 1102 (2014) (emphasis added). On appeal, the Federal Circuit agreed that support of a part of the body or a garment were the essential characteristics of Heading 6212, HTSUS. *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1108 (Fed. Cir. 2014) ("[W]e conclude that what unifies the list is that all of the listed items have support as their paramount function (whether for the body or for some other garment)").

Like the "shelf bra" at issue in *Victoria's Secret* and *Lerner*, "it would be inconsistent with facts [in this case] . . . to conclude that body support is *the* essential characteristic or purpose" of the MBs. *Victoria's Secret* at 1354; *Lerner* at 1327. The record demonstrates that MBs are specially designed to hold artificial breast forms in place—they do not support the body or another garment. For instance, the MBs feature a wide under band to ensure that the breast

form remains secure.  ECF 52-2, Plaintiff's Statement of Material Facts Not in Dispute ¶ 12.

Additionally, the MBs variable back fastenings are designed with hook rows to provide the right

amount of support to the breast form.  *Id.* at ¶ 15.  The primary function of the MBs is to hold an

artificial breast form in place and to prevent shifting, falling, or causing discomfort during

everyday activities.  *Id.* at ¶ 3.  Accordingly, the MBs are not classifiable as "similar articles"

under heading 6212 for the same reasons the Federal Circuit held that the "shelf bra" were not

classifiable under heading 6212—because body support was not the essential characteristic or

purpose of either garment. *Victoria's Secret Direct, LLC v. United States*, 769 F.3d at 1109.

## **B.  The Government Ignores the Design, Use, and Function of the MBs**

The Government attempts to dismiss evidence related to the use of the MBs by

categorically asserting that use is irrelevant because the term "brassiere" does not implicate a

type of use. Def's Memo at 10–14.  In support, the Government cites several cases in which the

Federal Circuit declined to read a use limitation into an *eo nomine* provision where the

merchandise at issue did not inherently suggest a type of use.  *See Carl Zeiss, Inc. v. United*

*States,* 195 F.3d 1375, 1379 (Fed. Cir. 1999); *GRK Canada* at 1359; *Ford Motor Co. v. United*

*States*, 926 F.3d 741, 750 (Fed. Cir. 2019).

However, the Government overlooks the fact that *eo nomine* provisions that specifically

call for a use analysis is only one of two scenarios in which use may properly be considered

under an *eo nomine* provision.  As this Court explained in *Allstar Mktg. Grp., v. United States*:

> [U]se may be considered in classifying an article pursuant to an *eo nomine*
> provision when (1) the use of the subject article is an important aspect of its
> identity, and consequently the article's classification; or, as relevant here, when
> (2) "determining whether [the subject article] fits within the classification's
> scope." *GRK Canada*, 761 F.3d at 1358–59 (internal citations omitted)

211 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2017).  Pursuant to the second scenario described above, courts have considered use even where the relevant *eo nomine* provision did not implicate use.  *See CamelBak Prod., LLC* at 1367–69; *Mast Industries, Inc. v. United States*, 9 CIT 549, 552–53, 1985 WL 25786 (1985), *aff'd* 786 F.2d 1144 (Fed. Cir. 1986); *United States v. Quon Quon Co.*, 46 C.C.P.A. 70, 73 (1959).  Accordingly, the Government's assertion that use is categorically irrelevant under an *eo nomine* provision is  inconsistent with binding precedent.

Moreover, the Government recognizes that the "substantially in excess test" is applicable in this case.  *See* Def.'s Mem. at 14.  Under this test, an item falls outside the scope of an *eo nomine* provision if it exhibits features "substantially in excess of those within the common meaning of the term."  *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996) (quoting *United Carr Fastener Corp. v. United States,* 54 CCPA 89, 91 (1967)).  "Factors such as design, use, or function may serve as 'analytical tools or factors' in making this determination."  *Second Nature Designs, Ltd. v. United States*, 660 F. Supp. 3d 1352, 1366 (Ct. Int'l Trade 2023) (quoting *CamelBak Prods.,* 649 F.3d at 1367)).[3]

Here, even if the MBs fall within the common meaning of brassiere, we submit that the design, use, and function of the MBs provide features substantially in excess of an ordinary brassiere.  The MBs are specifically designed for women who have undergone single or double mastectomies or lumpectomies and who have not had reconstructive surgery. Ordinary brassieres are not specifically designed to hold artificial breast forms in place and to cover scarring or radiation burns.  *See* ECF 52-3, Plaintiff's Memo in Support of its Motion for Summary Judgment ("Pls. Mem.") at 2-3. There is absolutely no need for ordinary brassieres to perform these functions. The use of an artificial breast form and an MB specially fitted to the wearer's

---

[3] The Federal Circuit has also considered sales and marketing literature to determine whether an item is outside the scope of an *eo nomine* provision.  *See CamelBak*, 649 F.3d at 1367–69

form and suited to her needs is often critical in countering potential deleterious psychological effects.[4]  Amoena's MBs are typically specially fitted to the wearer.[5]  Sales data further corroborates the uniqueness of the MBs.  In FY 2015-16 sales were: 26.4% to medical stores, 31.2% to specialty lingerie stores, 2.9% to pharmacies, 18.8% to hospitals, 9.0% to department stores, and 11.6% to E-commerce. Pls. Mem at 4.

Against this background, the principal functions of the MBs is other than the principal function of brassieres and as a result preclude classification of the subject MBs under heading 6012 as brassieres and similar articles.


**III. The MBs are Accessories to Artificial Body Parts.**

### A.  The MBs are Principally Used as Accessories to Artificial Breast Forms

In *Rollerblade, Inc. v. United States*, this Court defined the term accessory and announced that an accessory "must relate directly to the thing accessorized" and be subordinate or secondary to the article at issue.  24 CIT 812, 816–17, 116 F.Supp.2d 1247, 1253, *aff'd* 282 F.3d 1349, 1352 (Fed. Cir. 2002).  "An 'accessory' is therefore something that relates directly to and serves a secondary or subordinate function to the item accessorized." *Apple Inc. v. United States*, 375 F. Supp. 3d 1288, 1300 (Ct. Int'l Trade 2019), *aff'd,* 964 F.3d 1087 (Fed. Cir. 2020).

The Government argues that the MBs cannot be considered an accessory to the breast form because, in its view, the breast form is subordinate to the MB.  The Government is wrong

---

[4] In *Amoena (UK) Ltd. (Appellant) v. Comm'rs for Her Majesty's Revenue & Customs (Respondent), [2016] UKSC 41 (S.C.)* ,the UK Supreme Court acknowledged the psychological impact of breast surgery and the role mastectomy bras and breast forms play in countering that impact. In discussing whether the mastectomy bras could be described as accessories to the breast form, the court held that, "If it were necessary to identify some 'additional functionality' in that sense, the requirement would in my view at least arguably be met by the contribution of the bra to ... lessening the psychological impact of having had the mastectomy." *Id.* at para. 44.

[5] We recognize that once an MB and an artificial breast form has been fitted, that consumers may opt to purchase the MBs through e commerce sites.

because the breast forms are clearly the primary component with the MBs serving as accessories to the forms.[6]

We note here that Customs has consistently classified artificial breast forms of the type produced by Amoena in Heading 9021 as artificial parts of the body.[7] Note 2 to HTSUS Chapter 90 mandates that parts and accessories of Chapter 90 are "in all cases to be classified in their respective headings . . . ." Accordingly, an accessory to the breast form, which is principally used with the breast form must be classified alongside the artificial breast form in Heading 9021.

The breast form is the primary article because it is the component that replaces lost breast tissue, thereby restoring the natural appearance of the breast and providing crucial emotional and psychological benefits to women. Coomans Decl. ¶ 6.[8] The breast form is necessary for a woman who has undergone a mastectomy or lumpectomy, and who has not had reconstructive surgery, to keep the body aligned. The forms perform the vital functions of balancing the wearer's body and preventing physical issues. A woman who has undergone a mastectomy or lumpectomy may suffer from back, neck, and/or shoulder problems if the weight of the lost breast tissue is not replaced. The artificial breast form is specifically designed to replace the weight of the lost breast tissue for the individual wearer. Coomans Decl. ¶ 6; Coomans Decl. Ex. A.

Prosthetic breast forms are deemed medically necessary for insurance purposes. Coomans Decl. ¶ 7. Further, because Amoena breast forms are intended to affect the structure and function

---

[6] The term accessory is not defined in Chapter 90, HTSUS, or in the Explanatory Notes to this Chapter. Although not binding, the Explanatory Notes to Heading 8473 set forth a definition for accessory. The ENs state in relevant part: "[t]he accessories covered by this heading are interchangeable parts or devices designed to adapt a machine for a particular operation, or to perform a particular service relative to the main function of the machine, or to increase its range of operations." This definition may be instructive. The court should interpret the HTSUS so as to create harmony within the provisions.

[7] Customs has classified breast forms under Heading 9021 as artificial parts of the body. *See* N005512 (Feb. 2, 2007); HQ H291901 (Sept. 19, 2019). *See* Pls. Mem. at 2, 21.

[8] We have attached a declaration of Andrea Coomans, a National Sales Manager at Amoena USA Corp. Ms. Coomans manages and generates client accounts for sales of mastectomy bras and prosthetic breast forms. Ms. Coomans' expertise allows her to provide insight on the nature and function of the MBs and prosthetic breast forms.

of the body, they are subject to regulation by the U.S. Food and Drug Administration ("FDA") for safety and effectiveness. Included as Exhibit B to Andrea Coomans' Declaration are copies of Amoena's 2015 FDA registrations for the Amoena breast forms. Unlike breast forms, mastectomy bras, which perform the secondary role of supporting the breast form, do not affect the structure and function of the body and accordingly do not require FDA registration. Coomans Decl. ¶ 8.

The breast forms are specially and uniquely designed to replace natural breast tissue, and required years of business development and investment. Amoena began its business focused on developing and perfecting prosthetic breast forms to replace natural breasts and did not begin developing and selling MBs designed to complement the prosthetic breast forms and keep them firmly in place until years later. Coomans Decl. ¶ 5. The Amoena breast forms and Amoena's proprietary processes for manufacturing the forms are covered by several United States patents. Included as Exhibit C to Andrea Coomans' Declaration are copies of U.S. patents issued to Amoena for its breast forms. Coomans Decl. ¶ 9.

The MB plays a secondary, supportive role—it merely secures the breast form in place. The MB, on its own, cannot offer any of the restorative benefits the breast form provides.  The Amoena mastectomy bras are an accessory to the forms in that they are specifically designed to hold the form in place. The mastectomy bras feature a double pocket that secures the breast form in place to prevent the form from falling out when the wearer leans forward or engages in physical activity. The MBs therefore simply assist the forms in performing the desired function. Coomans Decl. ¶4. Amoena has invested and continues to invest significantly more time, effort and funds in the development of prosthetic breast forms rather than the mastectomy bras as these forms are the most important component necessary to replace natural breasts. Coomans Decl. ¶5.

The Amoena breast forms cost significantly more than the complimentary MBs. Exhibits D and E to Andrea Coomans' declaration include the 2015 and 2016 price lists for various prosthetic breast forms and MBs. The price lists demonstrate that a breast form can cost as much as 10 times more than the accompanying MB. Coomans Decl. ¶¶ 11, 12. The fact that the forms cost so much more than the MBs illustrates that the MBs are merely accessories to the forms, which are the primary component necessary to replace natural breasts whereas the mastectomy bras are designed to support the form and do not play a role in replacing the natural breast tissue. Coomans Decl. ¶10. Unlike Amoena's breast forms and processes for manufacturing the forms, Amoena's MBs are not covered by U.S. patents which clearly supports our claim that the MBs are not the primary component and are subordinate to the forms. Coomans Decl. ¶ 9.

The MB simply enhances the breast form's functionality. Generally, a woman would not wear the MB without the breast form because the purpose of the MB is to serve as an accessory holding the form in its proper place. However, the fact that the MB could be worn without the breast form does not alter the fact that the MB is an accessory to the form:

> [T]he mastectomy bra is an accessory as it is suitable for use principally with the breast form. The fact that it can be used without a prosthesis by a woman who has not had a mastectomy does not alter its nature. It is not simply an item of clothing. Its special features make it attractive for wearing by women who have undergone breast surgery but do not wish to appear as having been deformed as a result of that procedure. In fact, it is marketed as a mastectomy bra because of its special features.

*Amoena Austl. Pty Ltd. v Chief Exec. Officer of Customs (2016) AATA 357 (Austl.)*. at para. 79.

Moreover, judicial comity interests support finding that the MBs are accessories to the breast form. The Supreme Court of the United Kingdom and the Administrative Appeals Tribunal of Australia held that the Amoena MB is an accessory to an artificial body part. *See Amoena (UK) Ltd. [2016] UKSC 41 (S.C.); Amoena Austl. Pty Ltd.* Although these decisions are

13

not binding on this Court, foreign tribunals are afforded "respectful consideration." *Wilton Indus., Inc. v. United States*, 31 C.I.T. 863, 881 n. 17 (2007), *dismissed*, 312 F. App'x 311 (Fed. Cir. 2008).

**B.  Chapter 90 Note 1(b) Does Not Preclude Classifying the MBs in Heading 9021, HTSUS**

Chapter 90 Note 1(b) prohibits "[s]upporting belts or other support articles of textile material, whose intended effect on the organ to be supported or held derives solely from their elasticity (for example, maternity belts, thoracic support bandages, abdominal support bandages, supports for joints or muscles)" from classification in Chapter 90, HTSUS.  As explained in plaintiff's memorandum in support of its summary judgment motion this note does not exclude the MBs for two reasons: (1) the MBs support a breast form, not an organ; and (2) the support of the breast form is not derived *solely* from the MBs' elasticity.

The Government suggests that Note 1(b) may include artificial organs. Def's Memo at 15.  This broad interpretation of Note 1(b) contradicts the plain meaning of the terms of the Note. *See Jing Mei Auto. (USA) v. United States,* 682 F. Supp. 3d 1354, 1362 (Ct. Int'l Trade 2023) ("[A] court may rely on its own understanding of any terms undefined in the HTSUS or consult other reliable information sources to ascertain the common meaning of such terms.") (internal citation omitted).

Inferring that Note 1(b) includes artificial organs based on the word "organ" and a reference to support for joints expands the scope of Note 1(b) beyond its plain meaning. Furthermore, just because the note does not expressly limit the word "organ" to natural organs does not mean that this term may include artificial organs.  The absence of an explicit exclusion of artificial organs in Note 1(b) does not imply inclusion.  If Congress wanted to exclude

artificial organs from classification in Chapter 90 through Note 1 (b), then it would have said so. The Government's interpretation of Note 1(b) runs afoul of the general statutory rule of construction – *expressio unius est exclusio alterius*—the expression of one thing means the exclusion of all else. Moreover, multiple subheadings in 9021, HTSUS, specifically reference "artificial parts of the body" which shows that Congress knows how to distinguish between natural and artificial body parts.

As set forth in plaintiff's memorandum in support of its summary judgment motion, the artificial breast form is not an organ of the body. *See* ECF 52-3, Pls. Mem. at 17-18. Lexicographical sources define organ as "a differentiated structure (such as a heart, kidney, leaf, or stem) consisting of cells and tissues and performing some function in an organism" and "bodily parts performing a function or cooperating in an activity." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/organ (last accessed Oct. 9, 2024).

Customs has stated the obvious that breasts are organs.[9] However, unlike organs, the prosthetic breast form functions as an artificial substitute for an organ and does not consist of cells or tissue. Nor does the breast form perform a function in the human body, such as pumping blood through the body. Although the breast form when used with the subject MBs creates the appearance of a breast, it does not function as an organ of the body. The artificial breast form functions as an artificial substitute for an organ and does not consist of cells or tissue. Nor does the breast form perform a function in the human body, e.g., it does not pump blood throughout the body, as the heart does. Therefore, Amoena MBs fall outside the Note 1(b) exclusion because their effect is primarily on the breast form, which is not an organ of the body.

---

[9] See HQ 291901 (Sept. 19, 2019).

Further, the MBs are also not excluded from classification in Chapter 90 by Note 1(b) because they do not provide support "solely from their elasticity." Amoena MBs are composed of a variety of elastic and non-elastic materials. Pls. Mem. at 19. The Amoena MBs construction and special features, including the built in pockets designed and used to hold the breast form, work to support the artificial breast form and hold it in place. *Id.* Accordingly the MB does not provide support solely by its elasticity and instead primarily provides support via its construction. Pls.' Mem. 19-20; ECF 52-5, Declaration of Terri Fisher.[10]

## IV.    Heading 9021, HTSUS Must Prevail over Heading 6212, HTSUS.

The General Rules of Interpretation ("GRIs") govern the classification of merchandise and are applied in numerical order. *Gerson Co. v. United States*, 898 F.3d 1232, 1235 (Fed. Cir. 2018).  Under GRI 1, goods are classified "according to the terms of the headings and any relevant section or chapter notes." *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005).  Section and chapter of the HTSUS are "not optional interpretive rules, but are statutory law . . . ." *Id.* (internal citation omitted).

Pursuant to GRI 1, the MBs must be classified under heading 9021.  Chapter 90 Note 2 mandates that parts and accessories of Chapter 90 are "in all cases to be classified in their respective headings . . . ."[11]  Since it is undisputed that the breast form is classified under heading

---

[10] The declaration of Ms. Terri Fisher supports the fact that the support function of the Amoena mastectomy bra is accomplished principally by its construction and special features, not its elasticity.

[11] Note 2 to Chapter 90:

> **(a) Parts and accessories which are goods included in any of the headings of this chapter or chapter 84, 85 or 91 (other than heading 8487,8548 or 9033) are in all cases to be classified in their respective headings;**
> **(b) Other parts and accessories, if suitable for use solely or principally with a particular kind of machine, instrument or apparatus, or with a number of machines, instruments or apparatus of the same heading (including a machine, instrument or apparatus of heading**

9021[12]  and the MBs are accessories to those to the breast forms, the MBs must be classified

under heading 9021.

In the event this Court finds that the brassieres are *prima facie* classifiable under both

Heading 6212 and Heading 9021 and applies GRI 3(a), then the MBs should nevertheless be

classified under heading 9021 as it provides the most specific description.  As a general rule, use

provisions are more specific than *eo nomine* provisions, and heading 9021 is a use provision.[13]

In *Totes, Inc. v. United States*, the Federal Circuit departed from this general rule because the

principal function of the subject merchandise was more specifically described under an *eo*

*nomine* provision.  *See* 69 F.3d 495 (Fed. Cir. 1995).  In addition to the usual presumption that

use provisions prevail over *eo nomine* provisions in GRI 3 classifications, the principal function

of the MBs is to support an artificial part of the body, i.e. breast forms, which is more

specifically described under heading 9021, rather than as a brassiere under heading 6212.  Thus,

under GRI 3(a), heading 9021 is the proper classification.

---

**9010, 9013 or 9031) are to be classified with the machines, instruments or apparatus of that kind;**
    (c) All other parts and accessories are to be classified in heading 9033.
(Emphasis added).
[12] Customs classifies breast forms under Heading 9021 as artificial parts of the body. *See* N005512 (Feb. 2, 2007); HQ H291901 (Sept. 19, 2019).
[13] "A product 'described by both a use provision and an *eo nomine* provision is generally more specifically provided for under the use provision.'"  *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 647 (Fed. Cir. 2013) (quoting *Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1394 (Fed.Cir.1994)).

**<u>CONCLUSION</u>**

The subject MBs are classifiable as accessories to artificial parts of the body under

subheading 9021.39.00, HTSUS The Government has failed to establish that the MBs are more

appropriately classified in heading 6212 than in heading 9021. For the foregoing reasons,

plaintiff respectfully requests that the Court grant its motion for summary judgment and deny

defendant's cross-motion for summary judgment.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
Tel. (212) 557-4000
JSpraragen@gdlsk.com

By:    <u>/s/ Katherine A. Dobscha</u>
Robert B. Silverman
Katherine A. Dobscha
Joseph M. Spraragen

Dated: May 9, 2025
New York, New York

18

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to USCIT Standard Chambers Procedures Rule 2(B), I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 5,736 words including text, headings, footnotes, and quotations.  This word count is within the limit of 7,000 words set forth in Rule 2(B).

<u>/s/ Robert B. Silverman</u>
Robert B. Silverman
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
599 Lexington Avenue, FL 36
New York, New York 10022

Dated: May 9, 2025
     New York, New York

13193091_1