Slip Op. 26-22

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMOENA USA CORP., <br><br>                     Plaintiff, <br><br>           v. <br><br> UNITED STATES, <br><br>                     Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 20-00100 |

**OPINION**

[Denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion for summary judgment.]

Dated: February 27, 2026

   Robert B. Silverman, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, N.Y., argued for Plaintiff Amoena USA Corp.  With him on the brief were Katherine A. Dobscha and Joseph M. Spraragen.

   Beverly A. Farrell, Senior Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, of New York, N.Y., argued for Defendant United States. With her on the brief were Brett A. Shumate, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Justin R. Miller, Attorney-In-Charge.  Of counsel was Fariha Kabir, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

   Gordon, Judge: Before the court are cross-motions for summary judgment by Plaintiff Amoena USA Corporation ("Plaintiff" or "Amoena") and Defendant United States ("Government") as to the proper classification of Plaintiff's imported merchandise. See Pl.'s Mem. of L. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Br."), ECF No. 52-3; Def.'s Mem. of L. in Opp. to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Br."), ECF No. 62; see also Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. for

Summ. J. and Mem. in Opp. to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 65; Def.'s Reply Mem. of L. in Opp. to Pl.'s Mot. for Summ. J. and in Further Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF No. 68. Plaintiff challenges the U.S. Customs and Border Protection's ("Customs") 2016 classification of mastectomy brassieres ("mastectomy bras" or "MBs") under subheading 6212.10.90 of the Harmonized Tariff Schedule of the United States ("HTSUS"), claiming that the proper classification is subheading 9021.39.00. Compl., ECF No. 10. For the following reasons, the court will deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment.

## I. Background

Plaintiff is the importer of record for the subject merchandise, MBs, imported as a single entry on April 25, 2016. Summons, ECF No. 1; Parties' Joint Statement of Material Facts Not in Dispute ("JSMF"), ECF No. 52-1. Upon liquidation of the merchandise, Customs classified the MBs under subheading 6212.10.90, HTSUS, with a 16.9 percent ad valorem duty rate:

| | | |
|---|---|---|
| **6212** | | Brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted: |
| **6212.10** | | Brassieres: |
| **6212.10.90** | | Other. |

See Summons; JSMF ¶¶ 4, 5.

Plaintiff filed a protest that Customs subsequently denied. Summons. Plaintiff then contested the denial of the protest pursuant to 28 U.S.C. § 1581(a), claiming that the

imported merchandise is instead properly classified under subheading 9021.39.00, HTSUS, duty free:

| | |
|---|---|
| **9021** | Orthopedic appliances, including crutches, surgical belts and trusses; splints and other fracture appliances; artificial parts of the body; hearing aids and other appliances which are worn or carried, or implanted in the body, to compensate for a defect or disability; parts and accessories thereof: |
| **9021.39** | Other artificial parts of the body and parts and accessories thereof: |
| **9021.39.00** | Other |

See id.; JSMF ¶¶ 7, 8.

Following briefing, the court held oral argument on December 10, 2025. Oral Arg., ECF No. 74. At oral argument, the court offered both parties the opportunity to submit supplemental briefs regarding the definitions of "bust" and "brassiere," as well as the effect of the decision in Riddell, Inc. v. United States, 754 F.3d 1375 (Fed. Cir. 2014). See Def.'s Supp. Riddell Br., ECF No. 73; Def.'s Supp. Bust Br., ECF No. 74; Pl.'s Supp. Riddell Br., ECF No. 75; Pl.'s Supp. Brassiere Br., ECF No. 76.

The following facts are not in dispute. Plaintiff's main business is producing artificial breast forms, a type of prosthesis. Pl.'s Statement of Material Facts Not in Dispute ("PSMF"), ECF No. 52-2 ¶¶ 4, 5; Def.'s Resp. to PSMF ("DSMF"), ECF No. 62-3 ¶¶ 4, 5. Years after producing artificial breast forms, Plaintiff began manufacturing MBs that are constructed with a mix of fibers, metal, and plastic, and are composed of various textiles, including polyamide, cotton, viscose, polyester, elastane, and spandex. JSMF ¶¶ 13, 14; see Decl. of Andrea Coomans, ¶ 5, ECF No. 65-1. MBs were designed to be used by women who have undergone mastectomies and have not had

reconstructive surgery by providing support and holding an artificial breast form in position. PSMF ¶¶ 2–4; DSMF ¶¶ 2–4. MBs and the artificial breast forms are designed to create symmetry between the wearer's natural breast and the artificial breast form. PSMF ¶ 6; DSMF ¶ 6. Importantly, MBs' design includes pockets in both cups to insert and hold in place an artificial breast form. PSMF ¶ 7; DSMF ¶ 7. Other features of MBs' design include: wide shoulder straps to minimize strain on the shoulders, a wide under band to ensure that the breast form stays securely in place, a high center front to cover the breast and breast form, a higher side seam to provide coverage of any scars or radiation, a variable back fastening with a number of hooks, and elastics with soft edges at the inner cup edge. PSMF ¶¶ 10–16; DSMF ¶¶ 10–16.

Plaintiff's MBs are marketed to women who are, or previously were, facing cancer diagnoses or underwent mastectomies. PSMF ¶ 20; DSMF ¶ 20. MBs are shown at medical conferences, and Plaintiff has a section on its website for medical professionals to provide details to patients. PSMF ¶¶ 22, 23; DSMF ¶¶ 22, 23. MBs are most often purchased through medical specialists, orthopedic shops, or clinics where they are assisted by individuals taught to fit MBs and artificial breast forms. PSMF ¶¶ 24, 32; DSMF ¶¶ 24, 32. However, MBs are also purchased through department stores, specialty lingerie stores, and e-commerce websites. PSMF ¶¶ 24–26; DSMF ¶¶ 24–26.

## II. Standard of Review

The court reviews Customs' protest decisions de novo. 28 U.S.C. § 2640(a)(1). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247 (1986).  When faced with cross-motions for summary judgment, the court will "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Second Nature Designs Ltd. v. United States, 47 CIT ___, ___, 660 F. Supp. 3d 1352, 1373 (2023); see also Anderson, 477 U.S. at 261 n.2.

While the court must independently reach the correct tariff classification, the plaintiff has the initial burden of showing that the Government's classification is incorrect. Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).  Once plaintiff makes this showing, the court then considers "whether the [G]overnment's classification is correct, both independently and in comparison with the importer's alternative." Id. In making this determination, the court undertakes a two-step process.  The first step addresses the proper meaning of the relevant tariff provisions—a question of law. See Faus Group, Inc. v. United States, 581 F.3d 1369, 1371–72 (Fed. Cir. 2009) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). The second step involves determining whether the subject merchandise falls within a particular tariff provision as construed, which, when disputed, is a question of fact.  Id. Where there is no genuine issue of material fact in dispute as to the nature of the merchandise, the two-step inquiry "collapses into a question of law," Well Luck Co. v. United States, 887 F.3d 1106, 1110 (Fed. Cir. 2018), and the resolution "turns on the first step, determining the proper meaning and scope of the relevant tariff provisions." Faus Group, 581 F.3d at 1372.

III. Discussion

When, as here, the parties dispute the tariff classification of imported merchandise as a matter of law, the court must determine the proper meaning of the relevant tariff provisions' terms, as well as whether the imported merchandise properly falls within the scope of those provisions. Well Luck Co., 887 F.3d at 1110. Classification disputes under the HTSUS are resolved using the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation, applied in numerical order. See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999). "GRI 1 is paramount," as "[t]he HTSUS is designed so that most classification questions can be answered by GRI 1." Telebrands Corp. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1277, 1280 (2012). GRI 1 requires that tariff classifications are first "determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. If that single classification applies, the succeeding GRIs are inoperative. Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998). Once imported merchandise is found classified under a particular heading, the court then turns to the appropriate subheading to find the correct classification. Orlando Food, 140 F.3d at 1440.

In an eo nomine analysis, the court first construes the headings at issue as a matter of law by defining the elements of the heading, moving then to the second step, a factual inquiry, to determine whether the subject merchandise is covered by those elements. See, e.g., R.T. Foods, 757 F.3d 1349; Link Snacks, Inc. v. United States, 742 F.3d 962 (Fed. Cir. 2014). When examining the scope of a provision, the court construes tariff terms according to their common and commercial meanings and may rely on both its own

understanding of the term as well as upon lexicographic and scientific authorities. See Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003).

The central issue before the court is whether Customs properly classified the MBs as "brassieres" under heading 6212, or if MBs are instead properly classified as "accessories" to "artificial parts of the body" under heading 9021.

### A. Classification Under Heading 6212

Plaintiff first challenges that Customs improperly classified the imported MBs under heading 6212's term "[b]rassieres." Plaintiff argues that MBs do not satisfy the definition of brassieres because MBs "exhibi[t] features substantially in excess of those within the common meaning of the term," Pl.'s Br. at 9, and because a heading 6212 brassiere must "support two breasts, not one." Pl.'s Supp. Brassiere Br. at 2. Defendant's position is most clearly summarized by counsel at oral argument as follows: "a bra is a bra is a bra, as long as it is holding a woman's bust—whether that bust be her natural breast [or] whether that bust be a replacement breast." Oral Arg. at 44:08–44:18.

Heading 6212, covering "[b]rassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof," is an eo nomine provision, i.e., a provision that describes an article by a specific name. See Victoria's Secret Direct, LLC v. United States, 37 CIT 573, 908 F. Supp. 2d 1332, 1354 (2013) ("Victoria's Secret I"), aff'd, 769 F.3d 1102 (Fed. Cir. 2014) ("Victoria's Secret II"). If imported merchandise falls "within the scope of [an] eo nomine provision, then under Mita Copystar, GRI 1 mandates that the [imported] articles be classified" under that heading. CamelBak Prods., LLC v. United States, 649 F.3d 1361, 1364–65 (Fed. Cir. 2011) (quoting Mita Copystar, 160 F.3d

Court No. 20-00100                                                                                                    Page 8

at 712). When, as here, "a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary." Russell Stadelman & Co v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001).

Turning to the eo nomine term, "brassieres," the court concludes—after an examination of both lexicographic sources and prior court holdings—that "brassiere" is defined as an undergarment worn to support breasts. See brassiere, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/brassiere (last visited this date) ("a woman's undergarment to cover and support the breasts"); Oxford English Dictionary, https://www.oed.com/dictionary/brassiere_n?tab=meaning_and_use#14917203 (last visited this date) ("a woman's undergarment worn to support the breasts"); see also Victoria's Secret I, 37 CIT at 598, 908 F. Supp.3d at 1354 (finding that brassiere under Heading 6212 requires that it is "a women's undergarment designed to provide bust support"); Victoria's Secret II, 769 F.3d at 1108 (holding that terms under Heading 6212 "have support as their paramount function (whether for the body or some other garment)"); Van Dale Indus. v. U.S., 18 CIT 247, 252 (1994), aff'd 50 F.3d 1012 (Fed. Cir. 1995) ("Each of the exemplars under Heading 6212 provides support to the body or to certain other articles of apparel: brassieres support the breasts").[1]

---

[1] The court in Victoria's Secret I determined that the common lexicographic definitions require that a brassiere "support the bust." 37 CIT at 596, 908 F. Supp. 2d at 1354. Because the definitions currently identified by the court use the term "breasts," rather than "bust," the court adopts the definition that requires breast support.

(footnote continued)

To resolve the parties' dispute, the court must first decide whether the definition of "breasts" is confined to only natural breasts, as Plaintiff argues, Pl.'s Reply at 6 n.2, or if "breasts" also includes artificial breasts and artificial breast forms. In determining the scope of brassiere, "a use limitation should not be read into an <u>eo nomine</u> provision unless the name itself inherently suggests such a use." <u>Carl Zeiss</u>, 195 F.3d at 1379. The term "brassiere" does not suggest a use limitation based on the type of breast supported, whether that be a natural breast, an artificial breast, or an artificial breast form. Therefore, absent directive from the HTSUS or legislative history to the contrary, the court will not narrow the provision to only include brassieres used to support a woman's natural breasts. Doing so "would all but abrogate the foundational tenet of tariff classification that <u>eo nomine</u> provisions are distinct from use provisions and do not depend on either principal or actual use of the imported merchandise." <u>GRK Canada, Ltd. v. United States</u>, 885 F.3d 1340, 1347 (Fed. Cir. 2018).

Further guiding the court in determining the scope of heading 6212 brassieres are the relevant Explanatory Notes ("ENs"). While not dispositive, the ENs "are generally indicative of the proper interpretation of a tariff provision." <u>Degussa Corp. v. United States</u>, 508 F.3d 1044, 1047 (Fed. Cir. 2007). Here, EN 62.12 "instructs that the heading

---

Both parties stipulate that "bust support" means supporting breasts. <u>See</u> Pl.'s Supp. Brassiere Br. at 2 ("[P]laintiff submits that 'brassiere' means an undergarment worn to support breasts. This definition is consistent with the concept of bust support."); Def.'s Supp. Bust Br. at 1 (supporting statement made at oral argument that Government counsel made "that 'bust' referred to a woman's breasts, plural, and was consistent with the other definitions of brassiere."). Because the parties agree that bust support is equivalent to "supporting breasts," the analysis does not change regardless of whether the court adopts "supporting the bust" or "supporting the breasts."

includes '[b]rassieres of all kinds.'" Victoria's Secret I, 37 CIT at 596, 908 F. Supp. 2d at 1354 (quoting EN 62.12) (finding that sports brassieres, though not always worn as undergarments and are sold to subset of women engaging in athletics, are nonetheless brassieres under heading 6212). The EN supports the court's determination that a heading 6212 brassiere is not limited by use, and thus is an undergarment worn to support the breasts, regardless of whether the breasts are natural, artificial, or artificial breast forms.

It is undisputed that MBs are undergarments. PSMF ¶ 10; DSMF ¶ 10. Plaintiff argues that MBs are not classifiable under heading 6212 brassieres because MBs "exhibi[t] features substantially in excess of those within the common meaning of the term" and "the design, function, marketing, sale, and use of the subject MBs are different than [h]eading 6212 brassieres." Pl.'s Br. at 7–9. While presented as separate arguments, the design, function, marketing, sale, and use are commercial factors that "guide the court's assessment" of whether an article "possess[es] features substantially in excess of those within the common meaning" of a provision's term. CamelBak, 649 F.3d at 1368.

The court is not persuaded by Plaintiff's argument that MBs possess features substantially in excess of heading 6212 brassieres. As an eo nomine provision, heading 6212 brassieres "'include all forms of the named article[,]' even improved forms.'" CamelBak, 649 F.3d at 1364 (citing Carl Zeiss at 1379). There is an exception, however, that when an item "possesses features substantially in excess of those within the common meaning of the term," it "is not properly classified within an eo nomine provision."

Court No. 20-00100                                                                                            Page 11

Id. at 1365.  An article does not possess features in excess of a heading's terms merely for improvements or a more particularized function.  Id.; see also Victoria's Secret I, 37 CIT at 596, 908 F. Supp. 2d at 1354 (finding that because EN 62.12. provides that all brassieres are subject to heading 6212, sports brassiere is still brassiere under heading 6212 despite being sold to women for particular purpose of exercising and not being worn as undergarment).  Rather, simply put, the test is whether the difference between the imported article and articles typically described under an eo nomine heading is so significant that it is "a change of identity."  CamelBak 649 F.3d at 1365.

Plaintiff is correct that the court includes factors such as the article's design, marketing, and use in determining whether an article's features change its identity from an eo nomine provision.  Pl.'s Br. at 7–9; CamelBak 649 F.3d at 1365.  However, these factors "are only provided to help assess whether a product is 'beyond the reach of the eo nomine' provision" and are not guiding if the product "is encompassed entirely by the definition."  Kahrs Intern., Inc. v. United States, 35 CIT 924, 942, 791 F. Supp. 2d 1228, 1244 (2011) (quoting CamelBak 649 F.3d at 1367).

As defined by the court, MBs satisfy the meaning of heading 6212 brassieres. MBs are close fitting undergarments, with or without straps over the shoulders, and have cups to hold and support breasts.  PSMF ¶¶ 10–16; DSMF ¶¶ 10–16.  Notably, MBs contain pockets on each cup, i.e., MBs do not vary based on which side a woman's natural breast or artificial breast form is supported, so that a woman can elect to insert an artificial breast form on either side.  PSMF ¶ 7; DSMF ¶ 7; Def.'s Reply, Attach. B, Rule 30(b)(6) Dep. of Pl., at 35:10–15.  ("[T]he bra has a pocket on both sides which are equal, because

Court No. 20-00100                                                                                                    Page 12

you never know which side has been removed. So, we create bras which can be used for either side or both sides."). Because the court determined as a matter of law that heading 6212 brassieres include support of natural breasts, artificial breasts, and artificial breast forms, Plaintiff's MBs are "encompassed entirely" by the definition of brassiere. Kahrs, 35 CIT 924, 942, 791 F. Supp. 2d at 1244. The addition of the pocket features, to aid in a specific purpose for which they are intended, does not cause MBs to "los[e] their character" or render them in excess of heading 6212 brassieres. See Riddell, 754 F.3d at 1380 (finding that football pants, which required padding later inserted into them, are classified as apparel and "[do] not become 'sports equipment' just because, after importation, [they] will be used, even exclusively, in conjunction with non-clothing impact-protecting equipment.").

### B. Classification Under Heading 9021

Having rejected Plaintiff's argument that MBs are not classifiable under heading 6212, the court turns to Plaintiff's proposed heading 9021:

> Orthopedic appliances, including crutches, surgical belts and trusses; splints and other fracture appliances; artificial parts of the body; hearing aids and other appliances which are worn or carried, or implanted in the body to compensate for a defect or disability; parts and accessories thereof.

Plaintiff argues that MBs are properly classified under heading 9021 as "accessories" to artificial breast forms as "artificial parts of the body." Pl.'s Mot. at 12–14. The HTSUS does not define "accessories." Turning to lexicographic sources, accessory is defined as "an object or device that is not essential in itself but adds to the beauty, convenience, or effectiveness of something else" and "a thing of secondary or lesser

importance."  Accessory, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/accessory (last visited this date); see also dictionary.com, https://www.dictionary.com/browse/accessory (last visited this date) ("a subordinate or supplementary part, object, or the like, used mainly for convenience, attractiveness, safety, etc., as a spotlight on an automobile or a lens cover on a camera); Oxford English Dictionary, https://www.oed.com/dictionary/accessory_n?tab=meaning_and_use#39820599 (last visited this date) ("a subordinate or auxiliary thing; an adjunct; an accompaniment; (now) esp. a minor fitting or attachment").

In examining whether articles are classifiable as "parts" or "accessories" in a tariff provision, the parts or accessories "must bear a direct relationship to the primary article." Rollerblade, Inc. v. United States, 282 F.3d 1349, 1352 (Fed. Cir. 2002). Notably, however, "where an article 'performs its separate function without loss of any of its essential characteristics,' and, whether separate or joined, is 'complete in itself,' that article is a 'distinct and separate commercial entity.'"  ABB, Inc. v. United States, 421 F.3d 1274, 1277 (Fed. Cir. 2005) (internal citation omitted).  In Riddell, the court held that pants and girdles principally used and required to play football, and that were separately inserted with protective padding, did not meet the definition of "accessories" to sports equipment because "even apart from padding, [they] perform their function as clothing."  Riddell, 754 at 1381.  "While an item that is sold separately and has an independent commercial demand is not necessarily excluded from being a part [or accessory], such features of a commercial article are certainly probative." RKW Klerks Inc. v. United States, 94 F.4th 1374, 1380 (Fed. Cir. 2024).

Court No. 20-00100                                                                                                  Page 14

It is undisputed that Customs classified artificial breast forms as artificial parts of the body under heading 9021 and that MBs support the artificial breast forms. See Pl.'s Br. at 2, 21; Def.'s Br. at 14–15.  However, the court does not agree that MBs are "accessories" to artificial breast forms under the HTSUS.  MBs are specialized brassieres that support natural breasts, artificial breasts, and artificial breast forms, a "distinct and separate commercial entity" from artificial breast forms.  ABB, 421 F.3d at 1277.  Plaintiff's National Sales Manager declared that "Amoena initially focused its business on developing prosthetic breast forms" and "did not begin developing and selling mastectomy bras . . . until years later."  See Decl. of Andrea Coomans, ¶ 5.  Therefore, to hold that MBs are accessories would require that all heading 6212 brassieres are accessories because artificial breast forms can be, and prior to the MBs' creation, were, inserted in standard brassieres.  See id.  Just as pants and girdles "[have] a specialized use—to be worn along with, and to accommodate, protective pads while playing football—does not make [them] lose their character as 'articles of apparel,'" Riddell, 754 at 1381, so too does this Court find that MBs are not accessories to artificial body parts.

Because Plaintiff does not show that Customs erred in classifying MBs as brassieres under heading 6212, the court holds that Customs' classification is correct.[2]

---

[2] The court need not reach Plaintiff's argument regarding classification according to GRI 3 because the issue is resolved at GRI 1, rendering the succeeding GRIs inoperative.  See Mita Copystar, 160 F.3d at 712.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.  Judgment shall be entered accordingly.

                                                   /s/ Leo M. Gordon
                                              Judge Leo M. Gordon

Dated: February 27, 2026
       New York, New York